# CASES DETERMINED

## AT THE

# January Term, 1900.

---

GATZOW, Respondent, vs. BUENING and another, Appellants.

| | |
|---|---|
| 106 | 1 |
| d107 | 483 |
| 106 | 1 |
| 109 | 31 |
| 109 | 245 |
| 106 | 1 |
| 110 | 6259 |
| s49 LRA | 475 |
| 52 LRA | 621 |
| 106 | 1 |
| 111 | 3319 |
| d111 | 8320 |
| 106 | 1 |
| 113 | 4296 |
| 106 | 1 |
| 56 LRA 804n | |
| 57 LRA | 553 |
| 106 | 1 |
| 116 | 4 30 |

*February 3 — February 27, 1900.*

(1, 2) *Jurors: Examination: Bias: Waiver of errors.* (3, 4) *Notice of injuries, when required: Condition precedent or limitation?* (5) *Action, tort or contract? Conspiracy.* (6-9) *Restraint of trade: Unlawful combinations: Overt acts.* (10, 11) *Special verdict: Denial: Immaterial error.* (12-14) *Damages: Injury to feelings.*

1. Where a defense is that the acts complained of were done pursuant to the by-laws of a liverymen's union to which defendants belonged, jurors may, as a basis for challenge either for cause or peremptory, be asked as to their being biased against unions.

2. The improper exclusion of questions put to jurors on their examination is waived by failure to object to the collected jury.

3. Subd. 5, sec. 4222, Stats. 1898 (providing that no action to recover damages for "an injury to the person" shall be maintained unless notice shall have been given as therein prescribed within one year after the happening of the event causing such damages), refers to bodily injuries and does not apply to an action for loss of money and injury to the feelings caused by an unlawful conspiracy and the acts done pursuant thereto.

4. Said subd. 5, sec. 4222, Stats. 1898, prescribes a limitation upon the remedy, not a condition of the right itself, and the objection that the notice was not given is waived if not taken by demurrer or answer.

5. A complaint alleged that plaintiff had hired from one of the defendants, a liveryman, a hearse and carriage to be used at the funeral of plaintiff's child, and had paid therefor; that both defendants, with a malicious design to humiliate and injure plaint-

iff, entered into an agreement to deprive him of the use of the hearse and carriage and to cause them to be taken away from his residence at about the instant they would be needed to convey the child's body and attending friends to the grave; and that they carried out such design, thereby causing great mental distress to plaintiff, besides the loss of the amount paid by him. *Held*, that the action was one sounding in tort and not for breach of contract.

6. A combination of liverymen to limit their services to persons patronizing them exclusively, and to monopolize the livery business in Milwaukee, including service for funerals and to carry prices to and maintain them at such a level as the combination might see fit to adopt, and to so stifle competition in regard to such business as to paralyze individual effort and compel every person, in order to obtain proper facilities for a funeral, to submit to the dictates of the combine, is unlawful as against public policy.

7. Such a combination is none the less unlawful because existing under a self-imposed constitution and governed by by-laws and conducting its operations in a public or semi-public way; and the fact that they acted in accordance with their obligations to the association will constitute no protection to its members as regards liability for compensatory damages to a person specially injured by their overt acts done in pursuit of the purposes of the organization.

8. A member of such a liverymen's association let a hearse and carriage to plaintiff for the funeral of his child, but, upon learning that the person in charge was an undertaker and liveryman doing an independent business, joined with the secretary of the association, in accordance with its rules, in sending the vehicles away from plaintiff's house. This was done just as they were about to be used, regardless of the fact that such action would inevitably shock and greatly distress the plaintiff, in order to demonstrate the power of the association to punish independent liverymen and persons dealing with them. *Held*, that such acts were unlawful and rendered the wrongdoers liable for actual and also for exemplary damages.

9. Even though a combination may not be in itself unlawful as an unreasonable interference with trade or individual freedom, yet overt, unlawful acts by two or more of its members acting by agreement to carry out its purpose, will render the combination, as to them, unlawful.

10. Under sec. 2858, Stats. 1898, the right to a special verdict is absolute if the request therefor is made before any argument to the jury, and it is the duty of the trial court to prepare the form therefor. Where, therefore, a special verdict was seasonably requested and

Gatzow vs. Buening and another.

the court stated that counsel might prepare the questions, it was error, after the argument, when the request was renewed and the questions submitted for approval, to deny the request on the ground that it came too late.

11. Denial of a request for a special verdict was not a material error where the facts were admitted or established by the evidence without reasonable controversy, leaving nothing to submit to the jury except the amount of the damages.

12. Damages in a tort action are not divided into actual, compensatory, and exemplary. Actual damages and compensatory damages are synonymous terms, each covering all loss recoverable as a matter of right.

13. Where recoverable damages include injury to the feelings, compensation therefor is a matter of right, and not, like punitive damages, in the discretion of the jury.

14. There being no physical injury, recovery cannot be had for injury to feelings, where plaintiff hired, for the funeral of his child, a carriage and hearse of a member of a liverymen's association, and such member and the secretary of the association ordered them away just as they were about to be used, because of rules of the association that members should not furnish vehicles where the undertaker in charge patronized nonunion liverymen.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action for damages for injuries caused by an alleged unlawful conspiracy and acts done pursuant thereto. The complaint stated in substance as follows: July 30, 1897, plaintiff employed and paid defendant *Schubert*, a liveryman, for the services of a hearse and carriage for use at the funeral of the former's four-year-old child, which was to be buried from his residence in the city of Milwaukee, Wisconsin, on the 1st day of August, 1897. The hearse and carriage, with teams and drivers, as agreed upon, were sent to plaintiff's residence and there properly located in front of such residence to await the termination of the funeral services therein. Defendants entered into an agreement to deprive plaintiff of the use of the hearse and carriage and to cause them to be taken away from his residence at about

Gatzow vs. Buening and another.

the instant they would be needed to convey the child's body and attending friends to the grave side. Such agreement was entered into with a malicious design to humiliate and injure plaintiff, which was fully accomplished. Just as the funeral services at the house were over, and the coffin containing the child's remains about to be placed in the hearse, defendants, pursuant to the agreement above stated, caused the drivers of the hearse and carriage to take the vehicles away, leaving plaintiff to resort to such means as he might be able to procure to continue the funeral. When such occurrence took place there were a large number of people in attendance at the funeral, to whom plaintiff was unable to explain the rude breaking up of the funeral arrangements. The conduct of the defendants as aforesaid caused plaintiff great humiliation and mental distress, to his damage in the sum of $5,000, besides the loss of $8 paid for the use of the vehicles.

Defendant *Schubert* denied all the allegations of the complaint regarding an agreement between himself and *Buening*, or any agreement, to deprive plaintiff of the hearse and carriage, or either of them, or any design to maliciously or otherwise injure plaintiff. The allegations regarding the preparation for the funeral were admitted, including the allegation that the hearse and carriage were furnished to plaintiff and afterwards taken away so that they were not used at the funeral. All allegations of the complaint not specifically admitted or denied were denied generally.

The answer of *Buening* stated that there was a liverymen's association in the city of Milwaukee at the time of the occurrence in question, of which he was secretary, and *Schubert* a member; that one of the by-laws of such association prohibited, under penalty, any member thereof from furnishing vehicles of any kind to any liveryman who hired them out at less than the association prices, and that it was said defendant's duty, as secretary of the association, to do

whatever he did on the occasion complained of, in order to prevent violations of the association by-laws; that after the hearse and carriage left *Schubert's* barn to go to plaintiff's residence, the defendant was notified that *Schubert* was violating the laws of the association by furnishing vehicles to Nieman, a liveryman and undertaker who had charge of the funeral in question and who was not a member of the liverymen's association; that Nieman, on such occasion, as he was in the habit of doing, furnished carriages and vehicles at lower prices, and paid his employees less, than the association permitted; that on being informed of the facts he (*Buening*) communicated with *Schubert's* place of business by telephone and was requested therefrom to have the driver of the hearse communicate with his employer's place of business by telephone; that he complied with such request, and the result was that the hearse and carriages were taken away from plaintiff's residence and he was deprived of their use; that defendant merely performed his duties to the association, without any specific agreement with *Schubert* to injure plaintiff, and without malice toward him.

The evidence showed the existence of the liverymen's union as alleged in *Buening's* answer; that he was secretary and *Schubert* a member thereof; that Nieman was a liveryman and undertaker doing business outside of the association; that according to the by-laws of the association no member thereof was allowed to do business with any person who did not patronize its members exclusively, or to let a hearse to a private party for a funeral where the undertaker in charge of such funeral was reputed to patronize nonunion members; or to any person whose family, for the occasion, patronized a nonunion livery; that on the occasion in question plaintiff employed Nieman to obtain the carriage and hearse for him, and the engagement of the hearse and carriage of the defendant *Schubert* was made through Nieman in the name of the plaintiff and without *Schubert* knowing that Nieman was

in any way concerned in the transaction; that the business was done with one of *Schubert's* employees; that, fearing the transaction might lead to a violation of the rules of the association, *Schubert* directed the driver of the hearse not to remain at the funeral if a nonunion man was in charge; that after the hearse and carriage left *Schubert's* barn to attend the funeral, *Buening* was informed of the facts, particularly that Nieman was the liveryman and undertaker employed by plaintiff, whereupon, pursuant to his duty as secretary of the union, he communicated with *Schubert's* place of business, giving notice of the violation by the latter of the rules of such union; that *Buening* was thereupon requested, by or on behalf of *Schubert*, to cause the driver of the hearse to communicate with the latter's office by telephone, and pursuant thereto *Buening* went to plaintiff's residence and stated to such driver that his employer wanted to talk with him by telephone. There was considerable evidence that when the driver received word, as aforesaid, he got into the buggy with *Buening* and drove a short distance away from plaintiff's residence, but did not use the telephone; that he told *Buening* there was no need of it because he had orders to return and not allow the hearse and carriage to be used if Nieman officiated at the funeral, whereupon *Buening* drove back with the hearse driver, and such driver then drove away with the hearse and the carriage driver followed. There was further evidence to the effect that *Buening* visited plaintiff's residence for the purpose of preventing the hearse and carriage from being used by the plaintiff; that he ordered the driver of the hearse to return to his employer's barn; that he said to Nieman, "I am secretary of the union and authorized to have the hearse go home. I am not going to leave before the hearse goes away. I am going to break up this funeral. I am not going to have this thing go on, and this hearse has got to go home."

There was further evidence to the effect that, in *Buening's*

talk with the hearse driver and with Nieman, his conduct was such as to attract the attention of persons in the house and in the vicinity; that when he returned, after taking the driver away to talk with his employer's place of business by telephone, and the driver mounted the hearse and drove away, *Buening*, by word and manner, evidenced exultation over the success of his efforts to deprive plaintiff of the use of the hearse, saying to Nieman upon driving away, " You see what I can do. Good bye." There was further evidence to the effect that defendant *Schubert* ratified whatever was said and done in his behalf in respect to depriving plaintiff of the use of the hearse and carriage, and that all the acts in that regard were in strict harmony with the former's agreement with the liverymen's union.   There was further evidence to the effect that, as soon as plaintiff and the undertaker recovered from the confusion caused by the sudden and rude taking away of the hearse and carriage and the consequent disarrangement of the funeral plans, they proceeded with the funeral by placing the coffin in one of the carriages and thus conveying it to the grave. The evidence further tended to show that it was one of the purposes of the liverymen's union to compel every liveryman to belong to it or go out of business, and to prevent competition between liverymen and hold up the prices to such a level as the union might see fit to fix.

During the impaneling of the jury defendants' counsel asked questions of the jurors respecting their belief as to the right of persons to form a union for such objects as those of the one in question.  Such questions were objected to and the objections sustained, to which rulings due exceptions were taken.   When the panel of jurors was complete no objection was made to the jury as a whole.   Before the trial commenced, defendants' counsel moved the court to compel plaintiff to elect whether he would proceed in the action for damages for breach of contract or for damages for a tort. The

Gatzow vs. Buening and another.

motion was denied and the ruling was excepted to. A further motion was made by defendants' attorneys to strike out all of the allegations of the complaint appropriate to an action on contract, which motion was denied and the ruling excepted to.

Defendants' counsel moved the court to instruct the jury, in substance, as follows:

(1) There being no physical injury in this case, plaintiff is not entitled to recover compensation for mental suffering.

(2) If plaintiff knew that Nieman was unable to procure the vehicles from any member of the liverymen's association, and, with such knowledge, caused Nieman to obtain them in his (plaintiff's) name, withholding from *Schubert* all knowledge of Nieman's connection with the transaction, there was no agreement between plaintiff and *Schubert* imposing any obligation upon the latter.

(3) It appearing that *Schubert* belonged to an association of liverymen and undertakers, obligating him under a penalty not to let vehicles to a person not a member of the association, and that Nieman was not a member, if Nieman falsely represented to *Schubert* that the vehicles were wanted by plaintiff, a friend of *Schubert* not engaged in the livery or undertaking business, with intent to deceive *Schubert* and to keep him from knowledge that Nieman was concerned in the transaction, the contract for hire was void and plaintiff cannot recover.

(4) Every person has a right to refuse to do business with any other person regardless of his reasons therefor, so far as the public or any individual member thereof is concerned.

(5) Any number of persons may lawfully associate themselves together and agree not to work for or deal with certain men or classes of men, and *Schubert* had a lawful right to refuse to furnish vehicles to plaintiff or Nieman, regardless of his reasons therefor.

(6) Plaintiff did not sustain any actual damage by the

occurrences complained of, and, if the agreement between plaintiff and *Schubert* was valid, plaintiff is entitled to nominal damages only.

(7) If *Schubert* was actuated by no other motive than to keep his obligations with the liverymen's association, he cannot be convicted of having acted from malicious motives.

(8) If *Schubert* did nothing more than what he supposed he was bound to do by reason of his relations to the liverymen's association, no damages can be assessed against him by way of punishment.

(9) If *Schubert*, in depriving plaintiff of the use of the hearse and .carriage, had no other motive than to protect himself from incurring a penalty for violating the rules of the liverymen's association, he cannot be made to pay damages to plaintiff by way of punishment, even if his conduct toward plaintiff were illegal.

(10) If *Buening* acted solely in performance of his duty as secretary of the liverymen's association, he is not liable to plaintiff.

(11) If plaintiff was not damaged other than by being deprived of the use of the hearse, he cannot recover.

Such instructions were refused and due exceptions were taken.

Before the arguments to the jury commenced, defendants' attorneys requested the court to direct the jury to find a special verdict, whereupon the court suggested to counsel to prepare questions. At the close of the arguments, questions were submitted by defendants' counsel and the request for a special verdict renewed. The court then said that the request came too late, and the special verdict was denied. The court then instructed the jury that defendants were liable in the case as a matter of law for the actual damages which plaintiff sustained, to the amount of the eight dollars which was paid to *Schubert*. The court further instructed the jury

that plaintiff was entitled to a verdict for at least eight dollars, and that, if the taking away of the hearse and carriage was a wilful act, they might award plaintiff compensatory damages for injury to his feelings; and that, if the jury believed that defendants were actuated by malice toward plaintiff, that they had an actual intent to injure him, or that their acts were done under such circumstances as to show an utter disregard of plaintiff's rights, then they might assess punitory damages in his favor.    The instructions were excepted to as regards liability of defendants for damages to plaintiff's feelings and as regards liability for punitory damages.

The jury rendered a verdict in plaintiff's favor for $1,000. There was a motion to set the verdict aside and for a new trial, upon all the grounds discussed in the opinion.    The motion was denied.    Judgment was rendered upon the verdict in plaintiff's favor, and defendants appealed.

For the appellant *Schubert* there was a brief by *O'Connor, Hammel & Schmitz*, and oral argument by *A. J. Schmitz*.

*W. B. Rubin*, for the appellant *Buening*.

*R. N. Austin*, for the respondent.

MARSHALL, J.    Questions put to jurymen during the impaneling of the jury as to their being biased against unions were improperly excluded.    That was a legitimate subject of inquiry leading up to questions going to competency and as a basis for a challenge for cause, and, independent of that, as a basis for a peremptory challenge.    However, no objection to the collected jury was made, and that circumstance operated to waive the previous objections.    *Flynn v. State*, 97 Wis. 44; *Emery v. State*, 101 Wis. 627.

There was an objection to the introduction of any evidence because the action is for a personal injury, and notice of the claim to defendant, in compliance with subd. 5, sec. 4222, Stats. 1898, was not pleaded.    The idea of the appel-

lants' counsel is that the statute creates a condition prece-
dent to the right of action and that plaintiff must show
compliance with such condition to make such right of action
complete.   The wording of the statute is as follows: "No
action to recover damages for an injury to the person shall
be maintained unless, within one year after the happening of
the event causing such damages, notice in writing, signed
by the party damaged, his agent or attorney, shall be served
upon the person or corporation by whom it is claimed such
damage was caused, stating the time and place where such
damage occurred, a brief description of the injuries, the
manner in which they were received and the grounds upon
which claim is made, and that satisfaction thereof is claimed
of such person or corporation."   That refers to bodily in-
juries.   This is not such an action.   It is not within the
statute.   Moreover, the statute is a limitation upon the rem-
edy to enforce a right, not a condition of the right itself.
It is a limitation statute (*Relyea v. Tomahawk P. & P. Co.*
102 Wis. 301), unlike sec. 1339, which prescribes the con-
dition of a right as distinguished from a limitation upon a
remedy to enforce a right.   It being a statute of limitations,
if it were applicable to this case, and we say it was not, the
failure to take advantage of it, other than by an objection to
evidence on the trial, waived the limitation upon the rem-
edy.   The law in that regard is fully discussed in *Meisen-
heimer v. Kellogg, post,* p. 30, opinion by Mr. Justice Wins-
low.

It is urged that the cause of action stated in the complaint
is for breach of contract, hence that instructions to the jury,
permitting an assessment of damages as in a tort action,
were erroneous.   The trial court rightly decided that the
purpose of the action, as stated in the complaint, was to re-
cover compensation for damages suffered through tortious
conduct of the defendants.   The complaint sets forth a con-
spiracy to commit a wrong and acts pursuant thereto, to the

special injury of the plaintiff.    There is no room for serious controversy on that point.

Several errors are assigned on the theory that the combination of liverymen, known as the Liverymen's Association of Milwaukee, to limit their services to persons patronizing them exclusively, and to monopolize the livery business in Milwaukee, including such service for the burial of the dead, and to carry prices to and maintain them at such a level as the combination might see fit to adopt, and acts done in pursuit of the purposes of such combination to the prejudice of, and regardless of their effect upon, plaintiff, were not unlawful.    The trial court decided to the contrary.

It is not necessary in this case to decide to what length a combination of persons in restraint of trade, and interfering with personal liberty, may go to promote the interests of its members, without violating common-law rights and rendering such persons liable to respond in damages to the persons specially injured.    Judicial expressions, in recent years at least, have not been in perfect harmony on the subject.    The only safe course for the public, and legitimate course for the court, is for it to adhere strictly to the rules of the common law, both as regards what constitutes an unlawful conspiracy in restraint of trade, and the consequences to the guilty parties.    So long as that is the law by which rights in regard to such matters must be tested, it is not the province of the court to change, but to administer, it.

The law applicable to this case, as regards the illegality of the combination in question, was plainly stated by this court in *Milwaukee M. & B. Asso. v. Niezerowski*, 95 Wis. 129.    It was there decided that all combinations in restraint of trade are contrary to public policy and illegal, unless they are for the reasonable protection, by reasonable and lawful means, of persons dealing legally with some subject matter of contract.    A combination that will resort to such

Gatzow vs. Buening and another.

means as the ruthless breaking in upon the solemnities of a
funeral ceremony, or that aims to entirely monopolize such an
essential to the burial of the dead according to the customs
of the country as is usually furnished in cities by liverymen,
and to so stifle competition and hamper individual, inde-
pendent industry in regard to such business as to paralyze
individual effort and compel every person, in order to obtain
proper facilities for a funeral, to submit to the dictates of
the combine, will not stand the test above indicated. Such was
the liverymen's union under consideration, by the uncontro-
verted evidence. Such a combination is clearly unlawful as
against public policy, and the means resorted to to effect its
purposes in this case were likewise unlawful. It would be
hard to conceive of a combination more odiously detrimental
to the public interests, and more heartlessly oppressive to
individuals, than one that seeks to control the customary
means used in the burial of the dead, by the resort to such
wanton acts as were perpetrated by the defendants in aid
of the purposes of their combination.

This is an age of trusts and combinations of all sorts. There
is clamor against them on the one hand, and for the privi-
lege of combining upon the other, as if the law could be
changed to fit the opinions and selfish ends of particular
classes. There is clamor for laws to prevent combinations,
while law exists that condemns most of them, which is as
old as the common law itself, and sufficiently severe to rem-
edy much of the mischiefs complained of that is actual;
yet violations of such law are so common, and the remedy
it furnishes so seldom applied, that its very existence seems,
in many quarters, to be little understood. In *Reg. v. Druitt*,
10 Cox, Cr. Cas. 593, it was held that any combination of
persons to stifle and prevent the free use of labor or capital
within legitimate bounds is unlawful, and that the law fur-
nishes a remedy therefor. The liberty of a man's mind and
will to say how he shall bestow himself and his means, his

talents, and his industry, is as much the subject of the law's protection as is his body.

'A combination to do an act tending necessarily to prejudice the public or oppress individuals by unjustly subjecting them to the power of the confederates and give effect to the purposes of the latter, whether of extortion or mischief, is unlawful.' 2 Bishop, New Cr. Law, § 230; Desty, Cr. Law, § 11*b; Morris Run C. Co. v. Barclay C. Co.* 68 Pa. St. 173.

Every agreement between two or more persons to accomplish a criminal or unlawful object, or a lawful object by criminal or unlawful means, is an unlawful conspiracy, and any person whose rights are injured by acts done in furtherance of such conspiracy has his action at law for redress in damages.

If an unlawful combination exist, it is none the less unlawful because existing under a self-imposed constitution and governed by by-laws, and because it conducts its operations in a public or semi-public way, asserting the right, in pursuit of its purposes, to interfere with individual liberty and with the public interests. In a proceeding for damages for wrongdoing by such a combination to the special injury of an individual, the constitution and by-laws of the association, and protests of its members of innocence of bad intent, and of adherence to the obligations of their association, however innocent may be its name, to prevent incurring its penalties, will constitute no protection whatever, as regards compensatory damages to a person specially injured by overt acts of its members in pursuit of the purposes of the conspiracy.

The union under consideration is within the condemnation of the common-law rule that a combination of persons, natural or artificial, to restrict legitimate trade or commerce in any field, by hampering or destroying individual liberty, stifling competition, or preventing the exercise of individual freedom to dispose of one's labor or capital according to his

own free will, so long as the legal rights of other persons are not infringed upon, is unlawful. The limitations upon the rule are in the nature of exceptions to it to be shown by way of defense where the combination is shown to exist. If it is not so far-reaching, as regards effects upon the public, or time or place, or the benefits of the members are not so large, as to render the combination an unreasonable interference with trade or individual freedom, that will remove from it the stamp of illegality; yet overt, unlawful acts, by two or more members of the combination acting by agreement to carry out its purposes, will render the combination, as to them, unlawful. The plainest principles of public policy, as before indicated, condemn such a monopoly as was attempted in this case, and the conduct of the defendants to carry out the purposes of the combination was as clearly unlawful.

At the close of the evidence there was a request on the part of counsel for defendant *Schubert* for a special verdict, whereupon the court stated that the only material controverted question of fact as to such defendant was whether he participated in the withdrawal of the hearse, as stated in the complaint, and that counsel might frame a question covering that subject. At the close of the argument the request for a special verdict was renewed, and questions submitted for approval of the court. Such request was then denied as made too late, and the court proceeded to submit the case to the jury, by a general charge, for decision on the question of whether defendants, or either of them, participated in depriving plaintiff of the hearse after it arrived at his house on the day of the funeral, and on the question of whether the taking away of the hearse inflicted injury to the plaintiff's feelings, and whether the act was perpetrated with wilful intent to insult and injure plaintiff; also for an assessment of damages under rules given by the court.

The refusal to grant the request for a special verdict upon

the ground assigned therefor, was error.    Under sec. 2858, Stats. 1898, the right to such a verdict was absolute, the request therefor having been made in conformity with the statute before any argument to the jury.    The record indicates that the learned trial court did not consider the request complete till questions were prepared and submitted, because, when it was first made, preparation of questions by counsel was directed, and when they were presented and the request renewed, it was denied as coming too late.

The statute, in mandatory language, clearly imposes on the trial court the duty of preparing the form for the special verdict where one is seasonably requested.    *Schumaker v. Heinemann*, 99 Wis. 251.    It will hardly do to shift that duty onto counsel for the moving party and then deny his motion because the duty is not performed before arguments to the jury commence.    The plain letter of the statute was violated.    The only legitimate purpose of suggestions from counsel, as to what particular questions shall be submitted for a special verdict, is to direct the attention of the court to the issuable facts upon which the controversy depends. If the verdict does not cover all the issues essential to a determination of the case, no judgment can be rendered upon it; but if it does cover such issues no error can be successfully assigned because the form for the questions suggested by counsel was not adopted, or because questions were not framed and requested by such counsel.

The question of whether the refusal of the request for a special verdict constituted reversible error turns on whether it was prejudicial; for by the settled practice and the mandate of the statute (sec. 2829, Stats. 1898), the court must, at every stage of the action, disregard any error or defect in the proceedings which shall not affect the substantial rights of the adverse party.    The truth of the saying by Chief Justice Dixon, in the early history of the court, that the statute is a beneficent provision which covers a multi-

tude of errors, grows in significance as the instances multiply where the way to justice is by it rendered direct and certain and speedily traversed, notwithstanding numerous errors happening through inadvertence, negligence, or inefficiency at some point, that otherwise would delay and render the enforcement of remedies so burdensome as to, in effect, constitute a denial of justice in whole or in part.

The statute applies here. The court rightly decided, as before indicated, though the decision was not thereafter strictly followed in the charge, that the conduct of the defendants was wrongful, intentional, and specially injurious to plaintiff, entitling him to his remedy in damages therefor. It was discretionary with the court whether to direct the jury, in case of awarding exemplary damages, to separate the amount assessed therefor from the amount allowed for compensatory damages. Though the charge would indicate to the contrary, the record shows that all the facts warranting punitory damages were admitted, or were established by the evidence without reasonable controversy. Such being the case, there was nothing to submit to the jury except the mere question of the amount of the verdict. The trial court was not bound, on request for a special verdict, to submit questions covering uncontroverted facts. *Ault v. Wheeler & W. Mfg. Co.* 54 Wis. 300; *Kerkhof v. Atlas P. Co.* 68 Wis. 674; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215.

It follows that the denial of the motion for a special verdict was wrong solely on the ground of the reason assigned for it. It was useless to require the jury, as did the court, to say whether defendants, or either of them, participated in depriving plaintiff of the use of the hearse, because *Schubert* said he instructed his driver to return to the barn if a nonunion man was in charge of the funeral, and that he gave such instructions in conformity to his obligations to the union; the evidence was all one way that *Buening* was the

moving spirit in causing the driver of the hearse to obey the instructions of his master, and that his acts were in accord with his duties as secretary of the union, and in conformity to a request made of him, either by *Schubert* himself or by some one in his behalf, whose acts *Schubert* fully ratified with knowledge of all the facts. Such ratification rendered *Schubert* liable for actual and exemplary damages the same in all respects as if he had originally authorized *Buening* to act in his behalf. *Robinson v. Superior R. T. R. Co.* 94 Wis. 345. There was perfect concert of action between all the parties concerned in the transaction to deprive plaintiff of the use of the hearse, and the acts of each and all were in accord with the agreement between the members of the union.

The court needlessly required the jury to say whether facts existed warranting an assessment of exemplary damages. It was sufficient that they were instructed that the assessment of such damages was discretionary with them.

It was correctly said by the court, in substance, before the formal charge was given, that the acts of the defendants were wilful and with intent to deprive plaintiff of the use of the hearse at a time when they knew it would be impossible to supply another. As men of common sense, defendants must have known that their conduct would greatly shock the sensibilities of the plaintiff, would humiliate and cause him great mental confusion, pain, and suffering. No reasonable conclusion could be arrived at from the evidence, other than that the defendants intentionally carried out their unlawful design under such circumstances as to demonstrate the power of the combination to punish liverymen for doing business in an independent way, and persons for dealing with such nonunion liverymen; that with such ends in view they proceeded with reckless disregard of consequences and with full knowledge of the inevitable result to plaintiff. All the elements of fact warranting exemplary damages appear

clearly from the evidence as matter of law.   There was the wilful violation of plaintiff's rights, inflicted under circumstances of aggravation, insult, or cruelty, with vindictiveness and malice.   *McWilliams v. Bragg*, 3 Wis. 424; *Nichols v. Brabazon*, 94 Wis. 549.

The trial judge, in his charge to the jury, divided recoverable damages into three kinds,— actual, compensatory, and exemplary.   He said, "If you find for the plaintiff, the damages which he may recover are actual and compensatory damages."   He then, in effect, told the jury that eight dollars was the actual damage by the undisputed evidence, and that they should find a verdict at least for that sum; and then said, "If you find that the act of taking away the hearse was one of insult and humiliation to the plaintiff, then you may also allow damages to plaintiff's feelings for the insult, humiliation, and anxiety of mind suffered by him in consequence of such act."   Further instructions were given on the subject of punitory damages.   Exception was taken to that portion of the charge in regard to allowing damages for injured feelings, and also to a refusal to charge the contrary doctrine.

The views of the law so given to the jury were erroneous and prejudicial in several particulars, notably in the one specifically excepted to.   Damages in a tort action are not divided into actual, compensatory, and exemplary.   The term " compensatory damages " covers all loss recoverable as matter of right.   It includes all damages for which the law gives compensation, and that gives rise to the term *" compensatory* damages."   " Compensatory damages " and " actual damages " are synonymous terms.   Pecuniary loss is an actual damage; so is bodily pain and suffering.   *Wilson v. Young*, 31 Wis. 574.   The jury should have been told that plaintiff was entitled to recover full compensatory damages, and then instructed as to their elements in a case like this.   If it were a case where recoverable damages in-.

cluded injury to the feelings, the jury should have been made to understand that compensation therefor was a matter of right, not a matter in their discretion. When guilt is established in a tort action, whether exemplary damages should be allowed or not is submitted to the judgment of the jury; but not so compensatory damages.

In this case there was no physical injury to plaintiff, and no personal injury to him of any kind save to his feelings. The case does not fall within the few exceptions to the rule,— which prevails in this state and in most jurisdictions,— that mental distress alone is too remote and difficult of measurement to be the subject of an assessment of damages. The true idea is that, under the general principle applicable to tort actions that recoverable damages are limited to such as are the natural and proximate result of the act complained of, some physical injury is necessary to a definite causal connection between the wrongful act and the mental condition, to render the former, in a legal sense, the cause of the latter, and such condition, with its immediate cause, sufficiently significant to be comprehended and measured in a money standard by average human wisdom with a reasonable degree of certainty.

We will not go further in the discussion of the rule of damages. The law in regard to it, for this state, was, upon full consideration, declared in *Summerfield v. W. U. Tel. Co.* 87 Wis. 1, opinion by Mr. Justice WINSLOW. The general rule there stated is clearly applicable to this case. There are exceptions which will be found pointed out in the *Summerfield Case*, but they have no reference to a case of this kind.

The numerous exceptions saved by appellants might be discussed in much greater detail, but they are in the main covered by the foregoing. There were some propositions contained in the requests refused which were correct in the abstract, but unnecessary to the case because the facts were

not disputed, and immaterial because inapplicable to the facts. For the error in regard to the rule of damages the judgment must be reversed. No other reversible error has been discovered in the record.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.