# LEONARD *v.* ABNER-DRURY BREWING COMPANY.*

TRUSTS AND MONOPOLIES; UNJUST COMPETITION; RESTRAINT OF TRADE; ANTI-TRUST ACT; CONSPIRACY; EQUITY JURISDICTION; COSTS ON APPEAL.

1. A combination between several brewing companies forming a brewers' association, entered into for the purpose of preventing competition in the manufacture and sale of their product, fixing the price, and controlling the disposition of the same to retail dealers, providing that its members shall not sell such product at prices fixed by themselves nor below prices fixed by the association, and allotting the business of selling the same among them, and prohibiting any one of them from selling to customers allotted to another,—is a trust or conspiracy in restraint of trade within the 3d section of the anti-trust act of Congress (26 Stat. at L. 209, 647, U. S. Comp. Stat. 1901, p. 3201) ; and an attempt to coerce another company to enter the trust and obey its regulations is an invasion of private right, as well as inimical to the interests of the public; and the purposes and practices of such a combination or conspiracy are equally violative of the common law, which prevails in this District, and of which the 3d section of the statute is declaratory.

2. Such an agreement or combination cannot be declared null and void in

---

*Illegal Trusts and Monopolies.*—For the authorities bearing on the question of illegal trusts under modern anti-trust laws, both state and Federal, see editorial note to *Whitwell* v. *Continental Tobacco Co.* 64 L. R. A. 689.

equity at the suit of retail dealers engaged in purchasing and selling the product of a company sought to be compelled to join such association, but having no contract with it for the purchase of such product. Such a result can only be accomplished at the suit of the United States.

3. But where such retail dealers show that they have established a profitable business in selling the product of the company so sought to be coerced, which is unwilling to advance the price of the product, but wishes to continue to sell to them at the lower price, but, intimidated by the threats of the association, such company is about to yield to its demands, and will do so unless restrained, in which event there will be an advance in prices, and such dealers may thereupon be allotted as customers to some other member of the trust against their will, and be unable to purchase the product they have been dealing in even at the advanced price, and their business will be so destroyed,—an in-junction will lie at their suit to prevent the doing or continuing of the wrongful acts, the remedy at law, if any, even under the statute giving three fold damages, being inadequate, and consequential damages, such as loss of trade and profits and failure of credit and business, not being ordinarily recoverable at law.

4. The fact that the anti-trust act of Congress makes a conspiracy in restraint of trade a crime, and provides a penalty therefor, does not necessarily impair the ordinary jurisdiction of equity, where the criminal acts work irreparable injury to property. The statute does not substitute its remedy for others which existed before its enactment.

5. *Quære,*—Whether if the wrongs complained of by an individual, growing out of alleged acts in restraint of trade in the District of Columbia, as distinguished from acts relating to conspiracies in restraint of interstate commerce, should be remediless save by a resort to the anti-trust act of Congress, any party other than the United States can invoke the jurisdiction of equity to restrain their commission.

6. Where several brewing companies forming a combination or trust are charged by complainants in a bill in equity, retail dealers in malt liquors, with a conspiracy to compel another company to join the association, and such combination is held to be in restraint of trade, individuals who are officers of a labor union, and who are charged with attempting to procure its members to leave the employment of such company unless it will agree to enter such association, are equally within the scope of the remedy by injunction sought to prevent injury to the complainants through the execution of the objects of the conspiracy entered into by their codefendants.

7. Where some of a large number of defendants to a bill in equity demurred to the bill, and from a decree dismissing it the complainant appealed, and other of the defendants entered their appearance in this court

and were heard in support of the decree, this court, in reversing the decree, awarded costs against all of the defendants appearing in this court.

No. 1474.   Submitted February 21, 1905.   Decided March 7, 1905.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for an injunction.                    *Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree sustaining a demurrer to and dismissing a bill for injunction.   The bill was filed July 21, 1904, by James C. Leonard and Samuel G. Stewart, retail liquor dealers in the District of Columbia, on their own behalf and on behalf of others similarly engaged who may wish to intervene.   The defendants are the Abner-Drury Company, a corporation organized under the laws of West Virginia; the National Capital Brewing Company, a corporation of Virginia; the Arlington Brewing Company, a corporation of Virginia; the Washington Brewery Company, a corporation of New York; the Chr. Heurich Brewing Company, a corporation of Virginia; the managers of said corporations, respectively, and Louis S. Crown, Michael Cockery, and Timothy Healy.   It is averred that all of said corporations, save the Arlington company, have their breweries and general offices in District of Columbia; that the Arlington company brews its beer in the State of Virginia, but maintains an office and agency for the sale and distribution of its product in the District of Columbia.   Defendants Crown and Cockery, residents of the District, are charged as members and officers of an unincorporated association known as Local No. 63 of the International Brotherhood of Stationary Firemen; and Healy, a nonresident, as president of said International Brotherhood.

It is averred that the five brewing companies are engaged in manufacturing or brewing malt liquors, and dispose of the bulk of their product, which amounts annually to about two hundred

and seventy thousand barrels, in the District of Columbia; and that the retail dealers thereof are dependent upon them for the bulk of their stock in trade; that the said brewing companies, excepting the Heurich company, have confederated and conspired together in a brewers' association, or under a name of similar import, in order to prevent competition in the manufacture and sale of brewed or malt liquors, to control the disposition of the same to the retail liquor dealers, and to prevent competition in the price of the same; that by the terms of the confederation and agreement aforesaid no one of said brewing companies shall sell its product at a price to be fixed by itself, nor below an arbitrary price to be fixed by the associators; and, further, the business of selling beer is to be allotted among them, and no one is to sell to the customers allotted to another; that for more than a year a certain grade of "light" beer has been sold to retail dealers at $4 per barrel, with a discount of 10 per cent for cash, making $3.60 per barrel; that prior to said time the price for said beer had been $6, with a discount of $5 per cent for cash, making $5.70 per barrel; that the reduction had been caused by the Heurich company, which had never entered into any agreement with other brewers, and has until this date refused to do so, and that by reason of the reduction in price by the Heurich company the other companies were compelled to reduce the price of their beer to the same figure in order to meet the competition of the Heurich company; that in order to raise the price of beer to that of $6 per barrel the four companies aforesaid entered into a conspiracy to suppress the competition of the Heurich company, and to effectuate the same conspired together to compel the Heurich company to join the association aforesaid, and to abide by and observe the prices fixed thereby, as well as the distribution or allotment to be made among consumers and customers; that the Heurich company in the manufacture of beer is compelled to employ firemen who are members of said Local No. 63 of the International Brotherhood of Stationary Firemen; that in order to aid in the accomplishment of the purposes of the conspiracy the said four companies agreed with Crown and Healy to induce the firemen employed by the

Heurich company to break their contract of employment, unless the latter would agree to enter said association, submit to its regulations raising the price of beer and allotting a division of customers; that in pursuit of the objècts of the said conspiracy the said defendants composing the Brewers' Association procured the said defendant Crown to address a communication to the Heurich company notifying it that its contract with its firemen would be terminated on July 1, and that the firemen would not be permitted to work for it unless it joined the said association and submitted to its rules and exactions; that further, to effect the object aforesaid, said defendants composing said association caused the defendant Healy, in his character as president of the brotherhood aforesaid, to seek a conference with the defendant Heurich company, ostensibly to adjust a contract between said defendant and its firemen for the ensuing year, but in reality to compel said defendant to agree to enter said association and submit to its rules and regulations. Further allegations of the bill are quoted as follows:

"That at the said conference said Healy in the presence of the defendant Edward F. Abner, representing the Abner-Drury Brewing Company and acting for it in that behalf, and of Albert Carry, representing the defendant the National Capital Brewing Company and acting for it in that behalf, and of the defendant Bernard Katz, representing the Arlington Brewing Company, and acting for it in that behalf, informed the representative of the defendant, the Chr. Heurich Brewing Company, that unless the said last-named defendant should agree to confer with the representatives of the other four brewing companies representing the Brewers' Association aforesaid, and join said association and submit to its rules and exactions, particularly its requirement that the said Chr. Heurich Brewing Company should raise the price of its light beer to its customers to $6 per barrel, and sell only to such customers as the said association might allot to it, he, the said Healy, in his character as president of the International Brotherhood of Stationary Firemen, would not confer with said Chr. Heurich Brewing Company in respect to a contract between it and the said Local No. 63 of

the International Brotherhood of Stationary Firemen, nor permit its members to enter into the employment of said Chr. Heurich Brewing Company to serve the said defendant in the prosecution of its business. The said Healy then and there in the presence of the defendant Edward F. Abner, representing the Abner-Drury Brewing Company and acting for it in that behalf, and of Albert Carry, representing the defendant, the National Capital Brewing Company, and acting for it in that behalf, and of the defendant Bernard Katz, representing the Arlington Brewing Company, and acting for it in that behalf, further informed the representative of the defendant the Chr. Heurich Brewing Company that the said meeting was called for the purpose of compelling the defendant the Chr. Heurich Brewing Company to join said association composed of the other four defendant brewing corporations, and to raise the price of light beer to the retail liquor dealers to $6 per barrel, and to sell its beer only to such of the retail liquor dealers in the District as the association might authorize it to sell the same; and that, in the event of the said defendant the Chr. Heurich Brewing Company refusing to submit to its demand, other workmen in the employ of said defendant the Chr. Brewing Company would be required to quit work, and that the product of said brewery would, through the influence of said Healy, be boycotted, meaning and intending thereby that he, the said Healy, had the power and means and would use the same to interfere with and prevent the sale of the product of said Chr. Heurich Brewing company to these complainants and other retail liquor dealers and to general consumers of beer within the District, unless the said defendant complied with the said demands.

"11. The complainants further show that they are and have for some years past been engaged in the purchase and sale of the product of the defendant the Chr. Heurich Brewing Company, and have a large demand for the same in their business; that if the said defendant the Chr. Heurich Brewing Company shall yield to the demands of the other defendants, and increase the price of the beer to $6 per barrel, the said increase of price will involve great loss and irreparable injury to these com-

plainants and other retail liquor dealers similarly situated, and that, if the demands of said Healy and the said four defendant corporations composing said Brewers' Association are complied with by the defendant the Chr. Heurich Brewing Company, these complainants and other retail liquor dealers will be prevented from purchasing and selling the product of the defendant the Chr. Heurich Brewing Company to their irreparable loss and injury, and the deprivation of their customers, who are accustomed to purchase the said product from these complainants and others selling the same.

"12. Your complainants are further informed and believe and therefore charge that no disagreement or controversy has arisen between the defendant the Chr. Heurich Brewing Company and any of its employees; that no change in the services, hours of labor, or wages of the firemen employed by it is sought or desired by said firemen, and that the purpose of the defendant Healy and the defendant Crown in advising and commanding the said firemen to cease their employment with the said defendant the Chr. Heurich Brewing Company, as hereinafter set forth, is to embarrass said last-named defendant in its business, and compel it to abandon its competition in trade and its sale of its product at the price now charged by it to all consumers, and to compel it to increase the price to the sum of $6 per barrel, and to limit the sale thereof to certain specified purchasers, instead of extending the same to these complainants and all other retail liquor dealers.

"13. Your complainants are further advised and therefore charge that the purpose and object of the conspiracy entered into among the said defendants the Abner-Drury Brewing Company, the National Capital Brewing Company, the Arlington Brewing Company, the Washington Brewery Company, and the said Crown and Healy, by causing a strike or refusal to work among the employees of the defendant the Chr. Heurich Brewing Company, is to stifle competition in the brewing business, and to restrain the conduct of trade in violation of the rights of these complainants and of other retail liquor dealers and of the general public, and in violation of the law of the

land. And they are further advised and believe and therefore charge that the said design and purpose of the said defendants is contrary to public policy and good morals, and such as a court of equity can and ought to restrain by injunction against said defendants.

"14. Your complainants are informed and believe and therefore charge that the said defendant Healy, in furtherance of the conspiracy entered into by him and the defendant Crown and the four defendant brewing corporations composing the Brewers' Association aforesaid, has actually ordered the firemen employed by the defendant the Chr. Heurich Brewing Company to quit the service of said defendant, and to refuse further to perform their contract of employment with it at 12 o'clock noon on the 21st day of July, 1904, unless said defendant the Chr. Heurich Brewing Company shall submit to the demands of said conspirators, and enter into said Brewers' Association, and abide by and be governed by its rules and exactions, and agree to raise the price of light beer to $6 per barrel, and to sell the same only to such persons as the said association shall prescribe.

"15. Your complainants are further informed and believe that the said defendant the Chr. Heurich Brewing Company is considering the said threats and demands of the said defendants, and may by reason of the threatened injury to its business yield to the demands of said defendant and enter said association, and as a consequence thereof increase the price of its beer to $6 per barrel, and submit to the restrictions of the said association as to the persons to whom the same may be sold.

"16. Your complainants are advised and believe and therefore charge that the said agreement and confederation between the said defendant corporations composing the Brewers' Association is an unlawful agreement in restraint of trade, designed to prevent competition in business and to restrict the persons to whom the products of breweries may be sold, and that the said defendants cannot lawfully maintain said association or enforce its rules, and that it will be unlawful for the defendant the Chr. Heurich Brewing Company to enter into

said agreement and confederation, or to abide by and observe its rules and restrictions."

The prayers of the bill are: 1. That the association agreement be declared null and void. 2. That defendants, their agents, etc., be perpetually enjoined from attempting to coerce the Heurich company into joining said association or entering into the terms of said agreement. 3. That the defendants composing the association, their agents, etc., be perpetually enjoined from inviting, soliciting, or demanding that the Heurich company shall increase the price of its product to complainants, to any other retail dealers, or to any persons whomsoever, or directly or indirectly counseling or advising such action. 4. That the defendants composing the brewing association, their agents, etc., and the defendants Crown and Healy, be perpetually enjoined from commanding, counseling, advising, or by any means inducing the firemen or other employees of the Heurich company to quit the service of the same, or from in any manner attempting to regulate the price at which said company shall sell any of its product, or the person or persons to whom it may sell the same. 5. That the Heurich company be perpetually enjoined from entering into the confederation known as the Brewers' 'Association, or from entering into any combination or agreement with the defendant companies, or any of them, for the purpose of regulating the price at which the product of any of said corporations shall be sold, or the persons to whom the product of any of said companies shall be sold; or from in any manner attempting to restrict or restrain the competition between the several brewing companies in the prosecution of their business of manufacturing and selling the product of their breweries.    The Abner-Drury Brewing Company, and Harry Williams, the representative of the Washington Brewery Company, appeared and filed demurrers to the bill, which were sustained.    It does not appear from the record that any of the other defendants entered their appearance. The Abner-Drury Brewing Company and the Arlington Brewing Company have, however, appeared by counsel in this court and been heard in support of the decree appealed from.

*Mr. Wm. G. Johnson* and *Mr. J. M. Carlisle,* for the appellants:

1. The combination and conspiracy of the defendants was unlawful. 2 Pom. Eq. Jur. § 934n, p. 1333; *Crawford* v. *Wick,* 18 Ohio St. 190; *Emery* v. *Ohio Candle Co.* 47 Ohio St. 320; *Central Ohio Salt Co.* v. *Guthrie,* 35 Ohio St. 666; *Craft* v. *McConoughy,* 79 Ill. 346; *Morris Run Coal Co.* v. *Barclay Coal Co.* 68 Pa. 173; *Arnot* v. *Pittston & E. Coal Co.* 68 N. Y. 558; *Nester* v. *Brewing Co.* 161 Pa. 473; *Northern Securities Co.* v. *United States,* 193 U. S. 197, 339.

2. Not only is the combination alleged in the bill an unlawful one, but the means adopted to carry it into effect were also unlawful. *Thomas* v. *Cincinnati R. Co.* 62 Fed. 803; *Old Dominion S. S. Co.* v. *McKenna,* 30 Fed. 48; *Casey* v. *Cincinnati Union,* 45 Fed. 135; *Emack* v. *Kane,* 34 Fed. 47; *Angle* v. *Chicago R. Co.* 151 U. S. 1.

3. Apart from this common-law rule there is express statutory enactment declaring such a combination as is shown by the bill in this case to be illegal. Section 3 of the act of Congress of July 2, 1890, commonly known as the anti-trust act.

4. The complainants are entitled to the relief sought by the bill. *Jackson* v. *Stanfield,* 137 Ind. 592; *Old Dominion S. S. Co.* v. *McKenna,* 30 Fed. 48; *Casey* v. *Cincinnati Union,* 45 Fed. 135; *Emack* v. *Kane,* 34 Fed. 47; *Central Ohio Salt Co.* v. *Guthrie,* 35 Ohio St. 666; *Re Debs,* 158 U. S. 564.

*Mr. Charles W. Darr* for the appellees the Abner-Drury Brewing Company and Abner.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard,* for the appellees the Washington Brewery Company and Henry Williams:

1. The averments of the bill very clearly set forth an unlawful conspiracy and confederation that would be enjoined in

a court of equity at the instance of the United States, and it may be that sufficient is shown to justify an injunction upon the application of the Christian Heurich Brewing Company if that company had filed a bill, but not so with the appellants. To entitle complainants to relief they must show special injury. 2 Dan. Ch. Pr. 4th Am. ed. p. 1675; 10 Enc. Pl. & Pr. 900, note 2; *Georgetown* v. *Canal Co.* 12 Pet. 99; *Re Debs,* 158 U. S. 592, 593; *Smith* v. *Lockwood,* 13 Barb. 218; *Sparhawk* v. *Union Pass. R. Co.* 54 Pa. 401.

2. At the common law there was no cause of action by the master for enticing away his apprentice. Later, Parliament passed an act granting a remedy. For many years the law was only applied to cases of enticing away of apprentices. Afterwards the doctrine was extended by the courts to all cases where there were contracts, so that since the case of *Lumley* v. *Gye,* 2 El. & Bl. 216, if one induce another to break a contract an action for damages will lie. See also *Angle* v. *Chicago R. Co.* 151 U. S. 13; *Walker* v. *Cronin,* 107 Mass. 555; *Dale* v. *Grant,* 34 N. J. 142; *Doremus* v. *Hennesy,* 43 L. R. A. 802; Cooley, Torts, 2d ed. note 1, par. 70; *Allen* v. *Flood,* 67 L. J. Q. B. N. S. 119, A. C. 1.

In the case at bar, if the four conspiring defendant companies and the defendant Healy enticed or induced the employees of the Christian Heurich Brewing Company to quit its service and break an existing contract, the company would be entitled to an action for damages, but certainly not a person who expected to purchase goods from the company; if so, why not extend the remedy to persons who expected and had contracted to take the goods from the person who expected to purchase from the company, and so on, *ad infinitum.*

3. From the averments of the bill, particularly those contained in paragraph 16, it would appear that it had been framed under the anti-trust law (Supplement to Revised Statutes, 1874–1891, p. 763). A private bill for an injunction will not lie to enforce its provisions. *Blindell* v. *Hagan,* 54 Fed. 40; *Pidcock* v. *Harrington,* 64 Fed. 821, 2 Gold & Tucker's notes on Rev. Stat. 623. The anti-trust act is not confined

to combinations of railroad companies in restraint of trade, but extends to all classes of business, the direct result of which is in restraint of trade or commerce among the several States. *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211.

4. A court of equity has no criminal jurisdiction, and cannot interfere to prevent the commission of criminal or illegal acts, unless there is some interference, actual or threatened, with property or rights of a pecuniary nature; but when there is such interference, and there is no adequate remedy at law, the fact that the act may be criminal will not devest the juris-. diction of equity to prevent it. 16 Am. & Eng. Enc. Law, 2d ed. p. 363, and note 1.

*Mr. Lorenzo A. Bailey,* for the appellee the Arlington Brewing Company:

1. No legal injury to the complainants, past, present, or prospective, is shown by the bill. *Crowley* v. *Christensen,* 137 U. S. 86; *Giozza* v. *Tiernan,* 148 U. S. 657, 662; *Bartemeyer* v. *Iowa,* 18 Wall. 129, 133; *United States ex rel. Roop* v. *Douglass,* 19 D. C. 99; *Re Hoover,* 30 Fed. 51, 55; *Burke* v. *Collins* (S. D.) 99 N. W. 1112; *Haggart* v. *Stehlin* (Ind.) 29 N. E. 1073; *Tragesser* v. *Gray,* 73 Md. 250, 255, 9 L. R. A. 784; *State ex rel. George* v. *Aiken,* 42 S. C. 222, 231; 26 L. R. A. 345; *Harrison* v. *Lockhart,* 25 Ind. 112; *People* v. *Gallagher,* 4 Mich. 244, 257; *Adler* v. *Fenton,* 24 How. 407; *Truly* v. *Wanzer,* 5 How. 141.

2. The combination of the defendants as alleged is not unlawful or contrary to public policy. The policy of the law is not toward the unrestricted or general sale of beer. Therefore an agreement limiting the sale and providing for fixing the prices thereof is not contrary to public policy. *Anheuser-Busch Brewing Asso.* v. *Houck* (Tex. Civ. App.) 27 S. W. 692; *Vandeweghe* v. *American Brewing Co.* (Tex. Civ. App.) 61 S. W. 526. Combinations among competitors, the object of which is to realize a fair price for the goods manufactured and sold, do not contravene any rule of public policy, even though

they operate in some respects as in restraint of trade.    1 Eddy, Combinations, § 276.    A combination to control competition is legal where oppressive monopoly is not intended.    *Id.,* §§ 189–209, 270.    There is a clear distinction between acts which have inducement in malice or ill will, and those which have inducement in business competition and rivalry.    The latter are legal combinations, and the former are not.    8 Cyc. 650; *Doremus* v. *Hennessy,* 176 Ill. 608, 43 L. R. A. 802; *Mogul S. S. Co.* v. *McGregor,* L. R. 21 Q. B. Div. 544; *Cohen* v. *Berlin & J. Envelope Co.* 56 N. Y. Supp. 588; 2 Eddy, Combinations, § 1046.    The alleged purpose of the association to allot customers, etc., is not unlawful.    The brewers have a right to select the persons with whom they will do business.    It is so held in cases for injunctions against trade combinations.    *Continental Ins Co.* v. *Fire Underwriters,* 67 Fed. 310; *Tanenbaum* v. *New York F. Ins. Exchange,* 33 Misc. 134; 68 N. Y. Supp. 342; 8 Cyc. 654.    An act done by several is not actionable if a like act done by one alone would not be actionable.    What one may lawfully do singly, two or more may lawfully agree to do jointly.    8 Cyc. 646, 647, citing 24 How. 407; 34 Md. 407; 54 Minn. 223, and other cases.

3. The so-called Sherman anti-trust statute of July 2, 1890 (26 Stat. at L. 209), prohibits in the District of Columbia "every contract, combination in form of trust or otherwise, or conspiracy in restraint of trade or commerce." It is not to be presumed that Congress intended this to apply to a particular trade which it is the policy of Congress to restrict, such as the liquor business. If the matters complained of in the bill come within this statute, then the bill should have been filed by the United States district attorney, as provided by sec. 4 of the act. The statute (sec. 7) in such case gives the complainants a remedy at law. They have, therefore, no standing in court in this suit. *United States* v. *E. C. Knight Co.* 156 U. S. 1, 16.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. As it is charged in the bill, the combination between the

several defendants composing the Brewers' Association is, without doubt, a trust or conspiracy in restraint of trade within the 3d section of the anti-trust act of Congress (26 Stat. at L. 209, chap. 647, U. S. Comp. Stat. 1901, p. 3201), and the coercion attempted to be practised upon the Heurich company to compel it to enter the trust and obey its regulations of the advance of prices and the arbitrary division of customers is a palpable invasion of private right, as well as inimical to the interests of the public. *W. W. Montague & Co. v. Lowry,* 193 U. S. 38, 47, 48 L. ed. 608, 612, 24 Sup. Ct. Rep. 307; *Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211, 244, 44 L. ed. 136, 149, 20 Sup. Ct. Rep. 96; *United States v. Trans-Missouri Freight Asso.* 166 U. S. 290, 322, 323, 41 L. ed. 1007, 1021, 17 Sup. Ct. Rep. 540. The purposes and practices of the combination or conspiracy, as alleged, are equally violative of the common law, which prevails in the District of Columbia, and of which the 3d section of the statute is declaratory. *Northern Securities Co. v. United States,* 193 U. S. 197, 339, 48 L. ed. 679, 701, 24 Sup. Ct. Rep. 436; *Morris Run Coal Co. v. Barclay Coal Co.* 68 Pa. 173, 8 Am. Rep. 159; *Nester v. Continental Brewing Co.* 161 Pa. 473, 24 L. R. A. 247, 41 Am. St. Rep. 894, 29 Atl. 102; *Craft v. McConoughy,* 79 Ill. 346, 22 Am. Rep. 181; *Richardson v. Buhl,* 77 Mich. 632, 6 L. R. A. 457, 43 N. W. 1102; *Arnot v. Pittston & E. Coal Co.* 68 N. Y. 558, 23 Am. Rep. 190; *Jackson v. Stanfield,* 137 Ind. 592, 23 L. R. A. 588, 36 N. E. 345, 37 N. E. 14; *Gatzow v. Buening,* 106 Wis. 1, 14, 49 L. R. A. 475, 80 Am. St. Rep. 17, 81 N. W. 1003. The decisions of the highest courts of many other States are to the same effect.

2. The serious question for determination on this appeal is the right of the complainants to the equitable remedy of injunction to prevent the execution of the objects of the unlawful conspiracy. It is clear that they are not entitled to the relief asked in the first prayer of the bill, namely, that the agreement between the four members of the Brewers' Association be declared null and void. In respect of that agreement, merely, the concern of the complainants is not different from that of the

general public, whose interest can be protected in no other way than by a suit in the name of the United States. Nor can the attempted invasion of the rights of the Heurich Brewing Company by the immediate parties to that agreement, no matter how flagrant, be stayed at the suit of the complainants unless they can show that an irreparable injury will be done to themselves as the direct consequence of such invasion.

Their ground of complaint does not rest upon a contract with the Heurich company which the latter is about to break in obedience to the unlawful demands of the members of the trust and the compulsion exercised by them and their confederates. If such were the case, and . that contract should be broken through the malicious interference of the defendants, the complainants might maintain an action against them for the damages occasioned thereby. *Angle* v. *Chicago, St. P. M. & O. R. Co.* 151 U. S. 1, 13, 38 L. ed. 55, 63, 14 Sup. Ct. Rep. 240. They could certainly maintain an action against the Heurich company for such breach, and they might possibly maintain one against all of the defendants, including that company, for threefold damages under the provisions of section 7 of the antitrust act. Possibly, also, they might, under certain conditions, obtain an injunction against the Heurich company to prevent such breach.

Having no enforceable contract with the Heurich company, however, their right to any remedy depends entirely upon the condition that they have shown a case of legal injury which would directly result from the forcible and wrongful termination of their established trade relations with the Heurich company. Their allegations are in substance: That they have an established and profitable business in the sale of light beer of the Heurich company's manufacture; that they have been regularly purchasing such beer from the Heurich company at the price of $3.60 per barrel and retailing it for a long period of time, during which they have established a lucrative trade and custom; that the Heurich company is unwilling to advance the price of beer to the proposed trust rate, and wishes to continue its sales to complainants at the present price; that, intimi-

dated by the threats of the defendants and their malicious and oppressive acts, the Heurich company is about to yield to their demands, and will probably do so unless restrained; that the immediate and direct effect of such surrender will be an advance in the price of said beer to $5.70 per barrel; that another and probable effect will be that complainants will be assigned as customers to some other member of the trust, against their will, and be unable to purchase the beer of the Heurich company at even the advanced price; that the immediate and direct effect of either act, and particularly of both combined, will be to deprive complainants of many of their regular customers, and diminish their receipts and profits to their irreparable loss and injury.

In the event of the execution of the conspiracy these conditions would entitle them to an action for such damages as they would be permitted to prove at law, with threefold recovery under the statute. *W. W. Montague & Co. v. Lowry,* 193 U. S. 38, 48 L. ed. 608, 24 Sup. Ct. Rep. 307. But damages for acts which might work commercial ruin are not always recoverable at law, the rules of which relating to the measure of damages do not ordinarily warrant the assessment of consequential damages of an uncertain or speculative character, such as loss of trade and profits and the failure of credit and business. For such injuries the remedy at law, even under the statute giving a three-fold recovery, is inadequate and incomplete. In such cases, then, the jurisdiction of equity attaches, and to accomplish the ends of justice the writ of injunction will issue to prevent the doing or the continuance of the wrongful acts. *Watson v. Sutherland,* 5 Wall. 74, 79, 18 L. ed. 580, 583; *North v. Peters,* 138 U. S. 271, 281, 34 L. ed. 936, 939, 11 Sup. Ct. Rep. 346. See also *Vance v. W. A. Vandercook Co.* 170 U. S. 468, 480, 42 L. ed. 1111, 1116, 18 Sup. Ct. Rep. 645.

3. The contention of the appellees, that the exclusive right to equitable relief against the execution of conspiracies in restraint of trade is in the United States under the provisions of the anti-trust act, has not been seriously contested by the ap-

pellants, who claim the right independently of the statute. This, as we have seen, but declares the rule of the common law, then and now in force in the District of Columbia, under which any person may invoke the jurisdiction of equity to prevent an irreparable injury through such conspiracy. *Jackson* v. *Stanfield,* 137 Ind. 592, 23 L. R. A. 588, 36 N. E. 345, 37 N. E. 14; *Hagan* v. *Blindell,* 6 C. C. A. 86, 13 U. S. App. 354, 359, 56 Fed. 696. That the statute makes a conspiracy in restraint of trade a crime, and provides a severe penalty therefor, does not necessarily impair the ordinary jurisdiction of equity, where the criminal acts work irreparable injury to property. *Re Debs,* 158 U. S. 564, 593, 39 L. ed. 1092, 1106, 15 Sup. Ct. Rep. 900.

And whatever may be the rule of its enforcement generally, neither by express terms nor necessary implication does it undertake to completely substitute its remedies for all others which any person might have had before its enactment.

As the complainant's right to a remedy in equity can be maintained without regard to the act of Congress, it is not essential to determine whether, if the wrongs complained of would be remediless save by resort to that act, any party other than the United States can invoke the jurisdiction of equity to restrain their commission. At the same time we are not to be understood as admitting the defendant's contention on this point. The decisions supporting that contention have all been in cases under the sections of the act relating to conspiracies in restraint of interstate commerce, in jurisdictions where the power of Congress is limited to that end, and where the jurisdiction of equity, it seems, was not invoked on the ground of special and irreparable injury to the complainant. *Metcalf* v. *American School Furniture Co.* 108 Fed. 909, 912, and cases cited; *Gulf, C. & S. F. R. Co.* v. *Miami S. S. Co.* 30 C. C. A. 142, 52 U. S. App. 732, 86 Fed. 407.

Moreover, conspiracies in restraint of trade in the District of Columbia are determinable under the 3d section of the act, wherein, in the exercise of its plenary power of legislation, the Congress has enacted that "every contract, combination in form

of trust or otherwise, or conspiracy in restraint of trade or commerce, in any territory of the United States or of the District of Columbia * * * is hereby declared illegal." * * * The same section then declares the making of such contracts or the engagement in any such combination or conspiracy a misdemeanor, and provides a penalty. With the suggestion of these possible distinctions the question remains an open one.

4. The defendants Crown and Healy are not charged with an independent attempt to raise or fix the wages of the employees of the Heurich Brewing Company, and the rights of persons so engaged are not involved. The charge against them is that they have combined and confederated with the defendants composing the Brewers' Association for the sole purpose of aiding in the conspiracy to compel the Heurich company to join that association in order that its regulations looking to the advance of the price of beer and the allotment of customers to the several brewing companies may be enforced.

They are, therefore, equally within the scope of the remedy sought to prevent the irreparable injury of the complainants through the execution of the objects of the conspiracy entered into by their codefendants.

For the reasons given, we are of the opinion that the learned justice presiding in the equity court erred in sustaining the demurrer and dismissing the bill. If the testimony shall sustain the allegations of the bill substantially in the particulars before summarized, the complainants will be entitled to a decree granting the injunction prayed for, limiting the same, however, to such acts as have relation to the particular injuries sought to be done them. The dissolution of the trust agreement between the members of the Brewers' Association, and the restraint of action injurious to the general public, can only be had at the suit of the United States.

The decree must be reversed, with costs to be taxed against the Washington Brewery Company and Harry Williams, who entered the demurrer to the bill, and also against the Abner-Drury Brewing Company, the Arlington Brewing Company,

and the National Capital Brewing Company, who have entered their appearance in this court in support of the decree appealed from. The cause will be remanded for further proceedings in conformity with this opinion. It is so ordered. *Reversed.*