<span style="float:right">CHAPMAN<br>*v.*<br>JUDGE 5th DIS.CT.</span>

It is, therefore, adjudged and decreed, that the petition of relator be dismissed, at his costs.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## JACOB BURKETT *v.* DOMINIQUE LANATA.

The Act, approved March 15th, 1855, entitled "An Act supplemental to an Act relative to crimes and offences, is not restricted in its application to bank officers, but embraces all classes of persons.

In an action for malicious prosecution the specific allegation of *want of probable cause* is not essential or sacramental. Where the allegations of the petition amply indicate a want of probable cause, they contain all the necessary elements to prosecute the action.

The question of probable cause is composed of law and fact—it being the province of the jury to determine whether the circumstances alleged are true, and of the court to determine whether they amount to probable cause.

The allegation and proof that a party was arrested on an affidavit made by another, that he was discharged by the examining magistrate *proprio motu*, but clearly with the knowledge and silent acquiescence of the prosecutor, that the prosecution is at an end, and that the prosecutor acted without probable cause, and in legal intendment maliciously, gives the right to an action for damages.

If no evidence is given of particular damages, the jury are not therefore bound to find nominal damages only.

Exemplary damages should be commensurate to the nature of the offence, having due regard to the standing of the parties, and when extravagant damages are allowed, they will be reduced to their proper standard.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*Singleton & Clack* and *J. T. Wheat*, for plaintiff. *C. Dufour* and *C. Roselius*, for defendant and appellant.

DUFFEL, J. This is an action for a malicious arrest and imprisonment. The plaintiff claimed $10,000 damages, and the defendant is appellant from a judgment of $7000, rendered on a verdict of the jury who were impannelled to try the cause.

The principal facts of the case, as disclosed by the evidence, are : that the plaintiff is a merchant in the city of New Orleans, carrying on the business of a family grocery ; that he has a wife and two or four children ; that he was in the habit of supplying his store by purchases on short credits made from the commercial house of *Lanata Brothers* ; that being indebted to said house in the sum of $290 05, he was finally induced by the clerk or collector of *Lanata Brothers* to give, on the 3d of December, 1857, his check for said amount on the Crescent City Bank, payable to the order of *Lanata Bros.* and dated *ahead*, 8th December, 1857 ; that it was well understood, at the time, that he had no funds in bank, but expected to be able to deposit the amount in time ; that the check was given with that understanding, and at the solicitation of said collector to save him the trouble of calling again ; that early in the morning of the 8th of December, 1857, the plaintiff sent his clerk out to collect a sufficient sum to meet the payment of the check, but being unsuccessful, he desired his clerk to call on some friends to borrow the money, and that failing in this, he then, between the hours of 8 and 9 o'clock, A. M., sent his clerk to *Lanata Bros.* to ask them to hold the check for two days, when it would be paid ; the answer to this message was that the check had been used the day before ; that the check having been refused by the bank,

43

*Lanata Bros.* redeemed it ; that on the following day the plaintiff did again send his clerk to *Lanata Bros.* to ask them to keep the check until the next day, that he would then pay it, but a brother of the defendant answered that it was too late, that the defendant had gone out to make an affidavit against the plaintiff ; that the plaintiff was arrested on the same day on the affidavit of the defendant, " Charging him with having drawn a check on a bank having no money deposited therein at the time, with intent to commit fraud ;" that the plaintiff was searched by a police officer, and locked up in a cell for a space of an hour and a half, his store left opened in charge of a small negro ; that the plaintiff was released on giving bond to appear the next day before the examining magistrate ; that the check was paid on the following day, at the suggestion of the magistrate, the plaintiff protesting all the while against the arrest, and the charge was thereupon dismissed. The Recorder says, " I told *Mr. Lanata*, you will have your money and I will dismiss the case. I do not recollect that he made any objection to this, but I was not consulting *Mr. Lanata*. The charge was never withdrawn, it was dismissed on condition that it would be made good at the bank. The check was made good and the amount came into my hands, and was paid over to *Lanata Bros. Dominique Lanata* did not appear to prosecute the charge made under the affidavit, the case was never fixed for trial." The brother of the defendant testifies, " That *Mr. D. Lanata* made the affidavit. He made it for the purpose of compelling payment of this check. My brother is a gentleman of wealth. Money was very tight in the fall of 1857 and money scarce. All the free banks suspended, so did the Citizens' Bank." It appears also that the plaintiff made, from the 3d to the 8th of December, 1857, deposits in the Crescent City Bank to the amount of $1174 77, and that he only had to his credit on the evening of the latter day, $52 28, thus showing that he had, between those dates, drawn for $1122 49. The plaintiff contends that the Act approved March 15th, 1855, p. 398, entitled " An Act supplemental to an Act relative to crimes and offences," under which the affidavit was made for his arrest, applies only to bank officers. This is an error, its provisions are sweeping and embrace all classes of persons. The Act after enumerating the officers of banks, adds " As also any person who shall, with a view to defraud any such banker or banking company, knowingly *draw* or pay a check or checks, without funds in the said company drawn upon, etc."

The defendant filed a peremptory exception to the plaintiff's petition, to the effect that the petition does not contain any cause of action. The petition sets forth at length, the circumstances under which the check was drawn, his exertions to induce the defendant, and his co-partners, to withhold the check from the bank for two days, the affidavit, his arrest, his discharge and the motives which actuated the defendant ; and he charges specially, " That throughout the whole of these proceedings, connected with the arrest and confinement of your petitioner, the said *Dominique Lanata* has acted most wrongfully, *illegally* and maliciously." It is true, that the petition does not contain the specific allegation of *the want of probable cause ;* but we do not understand that those words are essential or sacramental. We look, in civil actions, to the substance in order to be able to determine the sufficiency of the cause of action ; and if, in the case at bar, the allegations of the petition are true, and they must be so considered to test the validity of the exception, then we are forced to acknowledge that the allegations of the petition amply indicate an utter want of probable cause, and contain all the necessary elements to prosecute the action. *Parish* v. *Municipality*, 8 An. 145; " The question of probable cause is composed of law and fact ; it being the province of

the jury to determine whether the *circumstances alleged* are true or not; and of the court to determine whether they amount to probable cause." Greenleaf vol. 2, ?454. The exception was therefore properly overruled.

On the merits of the cause it appears to us clear, from the evidence, that the *animus furandi* did not exist, for it is apparent that the plaintiff never entertained the idea of defrauding the bank, and this too to the perfect knowledge of the defendant. And had the complaint been made by any third innocent person, the plaintiff would have been, at once, discharged on the disclosure of the facts known by the defendant. The plaintiff may have acted dishonestly towards the defendant, but such conduct would not authorize a prosecution under the statute. A stronger case of want of probable cause, within the knowledge of the informer, could hardly be supposed; and it is not even alleged that the defendant acted under legal advice. It is alleged and proved that the plaintiff was arrested on an affidavit made by the defendant, that he was discharged by the examining magistrate, *proprio motu*, it is true, but clearly with the knowledge and silent acquiescence of the satisfied creditor, that the prosecution is now at an end, and that the defendant acted without probable cause, and, in legal intendment, maliciously.

Express malice is proved, the defendant made the affidavit for the sole purpose of compelling payment of the check; and the want of probable cause is established by direct evidence within the knowledge of the defendant. Greenleaf vol. 2, ?449, 454 and 455. *Grant* v. *Deuel*, 3 R. 18; *Driggs* v. *Morgan*, 10 R. 120; *Hall* v. *Acklin*, 9 An. 220; *Talbert* v. *Stone*, 10 An. 537; *McCormick* v. *Conway*, 13 An. 53.

The plaintiff having substantiated the averments of his petition, is entitled to indemnity for the peril occasioned to him in regard to his liberty, for the injury to his reputation, his feelings, and his person, and for all the expenses to which he necessarily has been subjected. And if no evidence is given of particular damages, yet the jury are not, therefore, obliged to find nominal damages only. Greenleaf vol. 2, ?456; C. C. 2294.

Exemplary damages should, nevertheless, be commensurate to the nature of the offence, having due regard to the standing of the parties; and when extravagant damages are allowed, they will be reduced to their proper standard. *Fitzgerald* v. *Boulat*, Opinion Book No. 29, p. 136; *McGary* v. *The City of Lafayette*, 4 An. 440. It appears to us, when we take all the surrounding circumstances of the case into consideration, and the imprudence, if not the want of good faith, of the plaintiff in withdrawing from the bank his funds, when he was aware of his outstanding check, that one thousand dollars would have been a sufficient atonement, and we will so decree.

It is, therefore, ordered, that the judgment of the lower court be reversed. And it is now further ordered, adjudged and decreed, that the defendant be condemned to pay to the plaintiff the sum of one thousand dollars, with legal interest from judicial demand, and the costs of court *à quà*, those of the appeal to be paid by the plaintiff.

BUCHANAN, J., dissenting. I feel constrained to dissent from the judgment in this case, for two reasons:

I. It is a rule of practice in this sort of action, established by many decisions, that plaintiff must allege, and prove, want of probable cause for the prosecution of which he complains.

Now, granting that the detail of the facts preceding the prosecution, in plaintiff's petition set forth, stands in lieu of a precise averment of want of probable

cause, as the opinion of the majority of the Court implies ; yet I find one of the most material of the facts thus detailed, directly contradicted by the evidence.

The petition avers, " That the reason of said check being dated on the 8th day of December, instead of the 3d, the day on which it was drawn, is, (as was stated by petitioner to defendant's clerk before drawing the same,) that at that time petitioner did not have the money in bank to meet the said check, but would endeavor to make collections, and deposit money enough to meet the said check, when it should be presented for payment at the bank ; " " that he gave his said check with the most confident expectation of being able to make collections, and deposit money enough in time to meet the said check when it should be presented at said bank for payment ; " " that on the morning of the day of the date of said check, viz : the 8th day of December, 1857, *not having been able to make collections of money sufficient to deposit in bank to meet the said check,* he sent a message," etc.    But the bank-book of plaintiff shows the following state of facts :

| 1857 | Dec. | 3 | Note Discounted, Net Proceeds | $ 212 00 |
|------|------|---|------|------|
| "    | "    | " | Cash Deposited | 268 61 |
| "    | "    | 4 | " | 372 54 |
| "    | "    | 5 | " | 143 50 |
| "    | "    | 7 | " | 186 00 |
| "    | "    | 8 | " | 204 12 |
| | | | Total | $1386 77 |

It is thus proved, contrary to the allegations of the petition, that plaintiff was able to make deposits, and did make deposits, in the bank in which this check was payable, between the time at which it was drawn, and the time at which it was dated and presentable, more than four times sufficient to have met this check. And a statement from the books of the bank, also in evidence, shows that the money thus deposited, had been withdrawn, upon other checks of plaintiff, before the check given to defendant was presented, which was on the day that it was presentable.    This, if not fraud, as charged in defendant's affidavit before the Recorder, has certainly so much the appearance of fraud, as to require explanation, which the plaintiff has not thought proper to give.    At all events, there is here a material variance between the *allegata* and the *probata*, which in my opinion is fatal to plaintiff's case.    Plaintiff puts his case before us, distinctly, upon the ground, that plaintiff's check of $290 25 was given to defendant upon the express understanding that plaintiff had no money in bank at the time it was so given, but would deposit money to meet it, by the time it was dated and presentable ; that circumstances beyond the control of plaintiff, to-wit : the impossibility of making collections, prevented him from making deposits in conformity to the understanding between the parties.    And the case, as disclosed by the evidence on trial, is, that it is not true that plaintiff could not make deposits to meet his checks when presentable, for that he actually did make sufficient deposits in the interval between the making of the check and its date, and that, if there was not money in the bank to meet the check, it was by the act of plaintiff himself having withdrawn the money from bank.

It seems to be considered, that defendant could not honestly and with probable cause make the affidavit, that defendant had attempted to defraud him :  because he was informed when he took the check, that plaintiff had no money in bank. But we are to notice, that the state of plaintiff's bank account on the 3d December, was not the question ; but that the check called for money on the 8th December, five days ahead ; and that defendant's clerk, on receiving the check, receipted the bill of defendant against plaintiff, as for cash received in payment of the same.

II. The second reason for which I think this action ought to fail, is, that there is no proof that plaintiff has been discharged in due course of law, from the criminal prosecution of which he complains as malicious.

An affidavit was made by defendant against plaintiff, under a penal statute, which inflicts imprisonment at hard labor in case of conviction. Upon this affidavit a warrant was issued by the Recorder of the Second District of New Orleans, and plaintiff was arrested. Being brought before the Recorder, bond was taken, with security, for his further appearance, and several persons having made to the Recorder representations of the fair character of plaintiff, that officer informed the counsel of plaintiff, *Mr. Field*, that the prosecution should be quashed and plaintiff discharged, provided he made good his check in bank. This was one or two days after the affidavit was made. On the same day, the Recorder repeated to the plaintiff the conversation he had with *Mr. Field*. Plaintiff went to the bank and made his check good; and the Recorder dismissed the case. In this arrangement, defendant was not consulted. These facts are proved by the testimony of the Recorder himself.

According to the authorities, this is not a discharge from a criminal prosecution, upon which to base an action for damages against the prosecutor. Starkie says, " The proofs in an action for a malicious prosecution are, 1st. a *prosecution by the defendant*, from which plaintiff has been *discharged*. It must appear that the plaintiff was *acquitted* of the charge; it is not sufficient to prove that the proceeding was stayed by the *nolle prosequi* of the attorney-general; otherwise if he had pleaded not guilty, and the attorney-general had confessed it; and it is sufficient that the party had been acquitted upon a defect in the indictment." Metcalf's Starkie on evidence, part 4, *verbo* malicious prosecution.

And Mr. Greenleaf, vol. 2, page 449, says, " So, if it was a *criminal prosecution*, the like evidence must be given of its termination. And it must appear, that the plaintiff was *acquitted* of the charge; it is not enough, that the indictment was ended by the entry of a *nolle prosequi*; though if the party had pleaded not guilty, and the attorney-general confessed the plea, this would suffice. So, if he was acquitted because of a defect in the indictment, it is sufficient. If the party has been arrested and bound over, on a criminal charge, but the grand jury did not find a bill against him, proof of this fact is not enough, without also showing, that he has been regularly discharged by order of court; for the court may have power to detain him, for good cause, until a further charge is preferred for the same offence. But in other cases, the return of *ignoramus* on a bill, by the grand jury, has been deemed sufficient."

From these authorities, it is plain, that a party who desires to hold another liable to him in damages for having prosecuted him criminally, must present himself armed with a verdict of a petty jury, empannelled to try him for the offence with which he has been charged; or at least with a discharge by the court seized of jurisdiction to hear the cause upon the consent of the attorney-general, or a return of a grand jury. The least that is required by any of the adjudged cases, is a return of an indictment " not found " by the grand jury. How different these are, from a compromise by an examining magistrate, acquiesced in by the accused under advice of counsel, needs no comment. Why did not plaintiff meet the charge before the only tribunal, legally competent to dispose of it?

I think the judgment of the court below upon the verdict of the jury, ought to be reversed; and that this suit should be dismissed.

LAND, J., absent.