FORD, Respondent, vs. SCHLIESSMAN, Appellant.

*September 8 — October 12, 1900.*

|107    479|
|111   ¹319|

*Trespass: Instructions to jury: Evidence: Possession of dwelling by wife in husband's absence: Damages.*

1. In an action for unlawfully trespassing upon and entering the premises and dwelling house occupied by plaintiff, it appeared, among other things, that the house belonged to plaintiff's husband; that in the night time, during his absence, and without plaintiff's consent and against her protest, defendant entered the house through the back door and began fussing with his clothes; that defendant said nothing while in the house, but walked up to the bedroom door; that on plaintiff's ordering him out, he passed through the house and went out of the front door. *Held*, that plaintiff, being at the time in the exclusive possession of the dwelling house and premises as against the defendant, might recover such damages as she sustained by reason of such invasion of her possession and rights, even though the evidence was insufficient to show any direct assault upon the plaintiff, or any attempt to have carnal intercourse with her.

2. The plaintiff in such case is not entitled to recover any damages to the premises, that being a matter between the owner of the house and the defendant.

APPEAL from a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

For the appellant there was a brief by *W. S. Stroud* and *Daniel H. Grady*, and oral argument by *Mr. Grady*.

*J. H. Rogers*, for the respondent.

CASSODAY, C. J. This action was commenced December 8, 1896, to recover damages for unlawfully trespassing upon and entering the premises and dwelling house occupied by the plaintiff and her four children late on the evening of May 9, 1896, and making indecent demonstrations towards the plaintiff, and thereby intentionally putting her in great fear and frightening her, and causing her great pain, suffering, mental anguish, humiliation, and mortification. The

Ford vs. Schliessman.

complaint also alleges that the defendant was at the plaintiff's house each of the two previous evenings, and on one of those evenings procured of the plaintiff a match with which to light his pipe. The answer admits being at the plaintiff's house on the night in question, and also being there and getting a match prior to that night, but otherwise denies each and every allegation of the complaint. At the close of the last trial the jury returned a verdict in favor of the plaintiff, and assessed her damages at $400. From the judgment entered thereon for that amount and taxable costs, the defendant brings this appeal.

It appears that the plaintiff lived in the southwestern portion of the village of Rio, and the defendant kept a hotel in the eastern portion of the village, about eighty rods distant. They were unacquainted until the night before the transaction complained of. Between 8 and 9 o'clock of that first evening the defendant was at the plaintiff's house, and called her by name, and introduced himself, and asked her for a match to light his pipe; and after lighting it he sat in the house for two or three minutes, and then left, about the time the plaintiff's sister came in.

The defendant testified to the effect that he had been unwell, and his physician had advised him to walk for exercise; that some time after 8 o'clock of the next night (Saturday) after getting the match, he started out to take the same walk as the night before; that the plaintiff's house was near the end of the walk; that from necessity he went into the water-closet on the plaintiff's premises; that when he came out he saw a little boy right there in the shanty, and spoke to him, and said, " Good evening, Bub," as he wished to show himself to be a man, and not a tramp; that the first he heard or saw of the plaintiff that evening was when Mr. Spaulding and Mr. Graves came out; that he was then in the shanty, and she was in the room in the other side of the house, and she said " Get out here, get out here," and that

he then went right through the house, without saying or doing anything to her or attempting to go into the bedroom; that he did not remain in the house for any space of time, but went right through the house and out the front door, and there found Mr. Spaulding and Mr. Graves, who took hold of him, and he told them to keep away from him, as he had done nothing wrong, and did not calculate to. On cross-examination he further testified to the effect that he remained just outside the kitchen — only a step or two from the kitchen — some minutes; that while he was there Mr. Spaulding and Mr. Graves came there to the door and asked him what he had to do there, and he said he did no harm; and that he did not hear them make any noise, except that.

Mr. Spaulding and Mr. Graves both testified to the effect that they lived near the plaintiff; that about 10 o'clock of the night in question they were told that the defendant was at the plaintiff's house; that they at once went there, and went around to the back side of the house, to the east kitchen door; that the inside door was open, but that there was a screen door that was shut; that they saw no one in the back room; that thereupon one of them took a stick of wood and rapped on the side of the shanty, and told the defendant to get out, that just at that time some one "hollered" that the defendant was going out the front way; and that they thereupon went around to the front door, and met the defendant there. The plaintiff testified to the effect that, the first she saw of the defendant on the night in question, he was at the back door of her kitchen, when she went out to close it to go to bed; that she then saw he was coming right up to the door,— had his hand on the door, coming into the house; that when he heard her he asked if he could come in; that she answered, "No, sir;" that he came right in, and "began fussing with his clothes;" that it frightened her, and she ran out of the front door and met Mrs. Graves and Millie Spaulding; that they called Mr. Spaulding and

Ford vs. Schliessman.

Mr. Graves, and they came and went around to the back side of the house, as she supposed; that during that time the defendant had been in the kitchen,— long enough for the men to come over and get around to the back door; that the defendant then came into the house and went into the bedroom door; that she then told him to come back and go out; that he then passed through the house and went out the front door, and the men took him away; that the defendant did not say anything while in the house; that he had no chance to say anything, as she ran through to the front door; that all four of her children were in bed, but the oldest boy was not asleep yet; that such conduct of the defendant frightened her badly, and the effects of the fright continued for several weeks, so that she could not sleep nights; that her husband was in Madison at the time, and had been for about six weeks; that the night the defendant got the match he said nothing out of the way to her; that she did not know but he was drunk, or something of that kind; that the door from the kitchen into the upright part of the house was quite close to the door entering the kitchen from the outside,— only a step between them; that after she ran from the kitchen to the front door, as stated, the defendant went back into the kitchen, and remained there until after Mrs. Graves and Millie Spaulding came, and the men came; that he did not come into the upright part of the house until after the men came, and that she did not order him out until after he came into the upright part of the house; that as the defendant went through the house he did not say a word to the plaintiff,— he had no chance, as there was company present; that when he came in, and before she ran to the front door, " he began fussing with his clothes,— fussing with his pants."

The important question in this case is whether the evidence thus summarized is sufficient to support the verdict rendered. The plaintiff, having obtained a verdict, is of

course entitled to as favorable a construction of such evidence as it will legitimately bear. Still we are not to lose sight of the nature of the action, and the principles of law applicable.

The court properly charged the jury to the effect that there was no question in this case as to any damage to the premises,— the house and lot,— and that they had nothing to consider in that respect; that that was a matter between the owner of the house and lot and the defendant, so they could not give any damages upon that ground in this case.

There is no pretense that the defendant ever touched the plaintiff, or that there was any physical contact between them. The defendant contends that the plaintiff cannot recover damages for mere fright and mental disturbance, and that the evidence shows nothing more. It seems to be well settled that damages arising from mere sudden terror, unaccompanied by any actual physical injury, but occasioning a nervous or mental shock, cannot be considered a consequence which in the ordinary course of things would flow from mere negligence. *Victorian R. Comm'rs v. Coultas*, 13 App. Cas. 225; *Spade v. L. & B. R. Co.* 168 Mass. 285; *S. C.* 172 Mass. 488; *Smith v. Postal T. C. Co.* 174 Mass. 576; *Mitchell v. Rochester R. Co.* 151 N. Y. 107. The same rule has been applied by this court to an action for damages for mental distress alone, caused by negligent delay in delivering a telegram. *Summerfield v. W. U. Tel. Co.* 87 Wis. 1. It was there properly said by my brother WINSLOW, in respect to cases relied upon as holding a contrary rule, "that there was in all of them the element of injury or discomfort to the person resulting either from actual or threatened force." *Id.* p. 12. Several exceptions to such rule were mentioned in that case. None of the exceptions pointed out in that case was present in the more recent case of *Gatzow v. Buening*, 106 Wis. 19, 20, where the opinion was written by my brother MARSHALL. It is said by a learned author that "it

Ford vs. Schliessman.

was early settled that substantial damages might be recovered in a class of torts where the only injury suffered is mental, namely, in cases of assault without physical contact." 1 Sedg. Meas. Dam. (8th ed.), § 43. The cases cited support the text. *I. De S. v. W De S.* Year Book, Lib. Ass. fol. 99, pl. 60; *S. C.* 1 Ames, Cases on Torts, 1; *Tombs v. Painter*, 13 East, 1; *Mortin v. Shoppee*, 3 Car. & P. 373; *Stephens v. Myers*, 4 Car. & P. 349; *Lewis v. Hoover*, 3 Blackf. 407; *Handy v. Johnson*, 5 Md. 450, 465; *Goddard v. G. T. R. Co.* 57 Me. 202; *Beach v. Hancock*, 27 N. H. 223; *Leach v. Leach*, 11 Tex. Civ. App. 699. As stated by TINDAL, C. J., in one of the cases cited: "It is not every threat, when there is no actual personal violence, that constitutes an assault. There must, in all cases, be the means of carrying the threat into effect." *Stephens v. Myers, supra.* The nature of such action has usually been trespass *vi et armis.* The theory upon which such actions have been sustained is the same as in actions of false imprisonment, where the plaintiff, without being touched by the defendant, has been allowed to recover substantial damages, though physically he suffered no actual detriment. 1 Sedg. Meas. Dam. (8th ed.), § 43, and cases there cited. A direct assault upon an individual, as well as such imprisonment, invades the personal liberty and rights of the individual assaulted, and hence comes within the exceptions mentioned in the *Summerfield Case, supra.*

One difficulty with the case at bar is that the evidence is insufficient to sustain a verdict that the defendant made any direct assault upon the plaintiff, or any attempt to have carnal intercourse with her. True, the time and manner of his coming were well calculated to excite suspicion as to his purpose in entering the house as he did. But verdicts must be based upon evidence, and not mere suspicion. The case was manifestly submitted to the jury, and punitory damages authorized, on the theory that the evidence was sufficient to

authorize the jury to find that the defendant entered the house and made a direct assault upon the plaintiff for the purpose of having carnal connection with her, whereas, in our judgment, the evidence is insufficient to support such verdict. In other words, there has, in our judgment, been a mistrial.

But it does not follow that the plaintiff can recover nothing. The plaintiff's husband was absent. During his absence she was the head of the family and in possession of the household. The defendant was a stranger, and had no right to go into the house without her consent. He not only went into the kitchen without her knowledge or consent, but against her protest. So he went through the house against her protest. True, the house belonged to the husband, but the possession for the time being was hers. Thus, in a case in Vermont: "The plaintiff gave lessons in music one day in each week to the defendant's daughters, and lodged at his house overnight. A private lodging room was assigned her by the defendant and his wife. On one occasion, at midnight, the defendant stealthily came into the room where the plaintiff was sleeping, sat down upon her bed, leaned over her person, and made repeated solicitations to her for sexual intimacy, which she repelled. *Held*, that the plaintiff's right to her private sleeping room during the night *was exclusive*, and that trespass *quare clausum* will lie against the defendant. Sitting on her bed, leaning over her person, etc., under the circumstances was an assault." *Newell v. Whitcher*, 53 Vt. 589. In that case there was a verdict for $225, of which $100 was for exemplary damages, and the same was sustained. But in that case there was a direct assault upon the plaintiff for the purpose of having carnal intercourse with her. In the case at bar we must hold that the plaintiff was at the time in the exclusive possession of the dwelling house and premises, as against the defendant; and, upon the evidence in the record, she has the right to recover such

damages as she has sustained by reason of such invasion of her possession and rights.

Other errors are assigned, but it is unnecessary to consider them, as they are not likely to arise upon a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.