SHALL, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*February 4—February 24, 1914.*

*Unlawful search: Wilful wrong: Damages: Mental suffering: Punitory damages: Evidence: Consent to search.*

1. Where employees of the defendant railway company, without warrant or authority of law, at midnight, when plaintiff, a widow, was alone in her dwelling house, without her consent entered and searched the house for the avowed purpose of obtaining information or evidence to be used in an effort to convict her son of burglary, there was a wilful wrong affecting her personal security and she is entitled to damages for

her mental suffering caused thereby. It was error, therefore, to exclude evidence showing how the entry and search affected her feelings and health, her nervous system, sleep, and appetite.

2. Evidence in such case that plaintiff walked around with a lamp after defendant's employees while they were making the search, and said they were welcome to any information they might find in her house, did not establish that she consented to the search, in face of direct testimony that she objected thereto and where the trial court excluded evidence offered to show that after one of said employees showed his star she was afraid to make further resistance.

3. Punitory damages were not recoverable under the evidence in this case.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

This action was brought to recover damages for an unlawful search of the plaintiff's premises made in the nighttime by 'Charles Busche and J. C. Olson while in the employ of the defendant and acting within the scope of their duty. The search of the plaintiff's dwelling was made on the 2d day of October, 1912, at about 12 o'clock midnight, by said Busche and Olson for the purpose of discovering property which had been stolen from the roundhouse of the defendant. The said Busche and Olson, while acting as the agents of the defendant, entered the plaintiff's dwelling at the hour mentioned without any search warrant and without the invitation or assent of the plaintiff. The search was made for the purpose of securing evidence against the person or persons who committed a robbery, the theory of Busche and Olson in making such search being that the plaintiff's son was connected with such robbery. The case was tried before a jury and the following verdict returned:

"(1) Was the search of plaintiff's rooms by Olson and Busche made without invitation from or assent thereto by plaintiff? *A.* Yes."

The judge in addition to the verdict rendered found that Olson and Busche at the time they searched the premises

were acting under the terms of their employment and within
the scope of their employment, and that their acts in that re-
gard were binding upon the defendant; and further found
that the plaintiff, under the undisputed evidence and the ver-
dict of the jury, was entitled to nominal damages only, and
assessed such nominal damages at $1.

Motion for new trial was made upon various grounds rais-
ing the errors discussed. Judgment was rendered in accord-
ance with the verdict and findings, from which this appeal
was taken.

For the appellant there was a brief by *Grace, Hudnall &
Fridley,* and oral argument by *George B. Hudnall.*

For the respondent there was a brief by *Luse, Powell &
Luse,* and oral argument by *L. K. Luse.*

KERWIN, J. The plaintiff produced evidence tending to
show that Busche and Olson were in the employ of defend-
ant at the time in question and engaged in investigation of a
supposed theft or burglary committed on the premises of the
defendant. They went to the dwelling house of the plaintiff
in the nighttime to search it with a view of obtaining evidence
connecting plaintiff's son with the crime. Plaintiff is a
widow and has two sons and a daughter with whom she lives.
On the night in question she was alone in her home, her two
sons and daughter being absent. She expected one of the
sons home about midnight, and when she heard Busche com-
ing up the stairs supposed it was her son until Busche en-
tered the hallway at the top of the stairs, the plaintiff's dwell-
ing house being in the second story, there being a harness
shop below. The stairway comes up from the west and lands
at the east part of the house near the dining-room door.
There is a door at the bottom of the stairway and also a
screen door, which was closed at the time Busche and Olson
entered. Busche and Olson entered the house at the time in
question without invitation from or assent by plaintiff, and
searched the dwelling house with flashlights, going into the

bedroom of the plaintiff's sons and making thorough examination, and also searching other parts of the dwelling. The plaintiff objected to the search. Her older son was at the time in the employ of defendant. After Busche got upstairs and into plaintiff's premises and met plaintiff, he asked if Herbert Shall (plaintiff's son) lived there and was informed by plaintiff that he did. He then called Olson, who was at the foot of the stairs, saying, "Yes, this is the place, come on up." Plaintiff then asked if her son had met with an accident, to which Busche answered, "Oh no, everything is all right." He showed his star and said, "There has been some trouble up at the roundhouse and we are looking for information." Plaintiff asked if he intended to connect her son with "a lowdown robbery," and he replied "Well, we are looking for information." He said that he had searched all the other night employees' houses and that hers was the last one. Plaintiff then begged them not to search the house and said there was nothing there that belonged to them. She said she was a poor, old lady, living there alone, and did not want them to search her house. They searched the dwelling house and afterwards discovered that her son had nothing to do with the burglary. It also appears that they had no search warrant or authority to enter the plaintiff's premises or make the search.

Evidence was ruled out, and rulings excepted to, as to how the entry and search affected the plaintiff's feelings and health; how it affected her nervous system, sleep, and appetite, on the ground that evidence of that character tended to establish an improper measure of damages. The court held that compensation for mental anguish could not be recovered, therefore ruled out all evidence tending to show injury to feelings, humiliation, and disgrace caused by the acts of Busche and Olson, and how the acts of Busche and Olson affected her. Also whether, after Busche showed the star, plaintiff was afraid to make further resistance to the search. Whether such rulings were wrong is the main question on this appeal.

Some stress is placed upon the rulings of the court below to the effect that plaintiff went around with Busche and Olson when they searched and made no objection to their progress, hence it is claimed there was no wilful attempt on their part to do anything against the wishes of plaintiff. But the evidence was sufficient to warrant the jury in finding that both the entry and the search were without invitation and against the assent of the plaintiff. True, plaintiff walked around after Busche and Olson with a lamp while they were making the search and said they were welcome to any information they might find in her house, or words to that effect. But it does not establish that she consented to the search, especially in face of direct testimony that she objected to the search. Moreover, testimony as to whether plaintiff was afraid to make further resistance to the search after Busche showed her his star was ruled out.

To support the rulings of the court below counsel for respondent relies chiefly upon *Summerfield v. Western Union T. Co.* 87 Wis. 1, 57 N. W. 973, and *Gatzow v. Buening,* 106 Wis. 1, 81 N. W. 1003. A careful examination of these cases, we think, will show that they do not support the contention of counsel.

In the case of *Summerfield v. Western Union T. Co., supra,* the action was upon contract to recover damages for negligent delay in delivering a telegram, and it was held that damages were not recoverable for mental distress alone caused by such delay; but in that case, among the cases excepted from the general rule there laid down, are cases of "wilful wrong, especially those affecting the liberty, character, reputation, personal security, or domestic relations of the injured party." Also cases where, by the negligent act of the defendant, physical injury has been sustained.

In *Gatzow v. Buening, supra,* the plaintiff had entered into an agreement with a liveryman for the services of a hearse and carriage for use at the funeral of the former's four-year-old child, which was to be buried from his residence. The

hearse and carriage with teams and drivers were sent to plaintiff's residence in accordance with the agreement. They were caused to be removed by acts of defendants and others at about the time they were needed to carry the body of the child and friends to the grave. The charge in the complaint was that the defendants and others conspired to effect the removal and deprive the plaintiff of their use to·humiliate and injure him, and that such acts caused plaintiff great mental distress and loss, besides the loss of the amounts paid for use of the vehicles. Defendants denied the conspiracy or intent to injure and justified their acts under by-laws of a liverymen's association fixing prices and prohibiting letting vehicles below the fixed prices, and that defendants were acting in accordance with their duty to prevent violations of the association's by-laws in doing what they did without malice towards the plaintiff.

It will be seen that in neither of these cases was there any physical interference with the plaintiff, trespass on property, or invasion of personal security of the home. In the latter case it was held that, there having been no physical injury to plaintiff and no personal injury to him of any kind save to his feelings, he could not recover for mental suffering, and that the case did not fall within the exceptions to the rule laid down in the *Summerfield* and other cases. So we think the case at bar is distinguishable from the *Summerfield* and *Gatzow* cases. The exceptions mentioned in the above cases have been referred to with approval in later cases in this court. *Ford v. Schliessman,* 107 Wis. 479, 83 N. W. 761; *Hacker v. Heiney,* 111 Wis. 313, 87 N. W. 249; *Koerber v. Patek,* 123 Wis. 453, 102 N. W. 40.

In *Ford v. Schliessman, supra,* there was no physical interference whatever with the plaintiff. The defendant merely went into the dwelling house of plaintiff in the night and passed through it without the consent of the plaintiff, and it was held that she was entitled to recover damages for the "in-

vasion of her possession and rights." This case recognizes the exceptions to the general rule that damages for mental suffering cannot be recovered where there is no physical interference.

In *Hacker v. Heiney, supra,* it was contended that in the absence of some other actual damage no recovery could be had for injury to the feelings. On this point the court said: "The rule for which the appellant contends has been applied only to cases of negligence, or alleged personal injury, where the mental suffering can result only from the injury and not from the tort," citing the *Summerfield* and *Gatzow* cases. In the case at bar the mental suffering resulted from the wilful and unlawful invasion and search of the plaintiff's dwelling house.

In *Koerber v. Patek, supra,* it was insisted that there could be no recovery for mental suffering occasioned by mutilation of a dead body, because there was no physical interference with plaintiff and no property in the corpse, but it was held that the wilful interference with the dead body was an actionable wrong and an invasion of the rights of relatives entitled to the corpse for burial for which damages for mental suffering could be recovered as compensatory damages. We think the decisions of this court fully justify the right of recovery of damages for mental suffering in the instant case. Other authorities bearing upon the question are: *Dunn v. Western Union T. Co.* 2 Ga. App. 845, 59 S. E. 189; *Smith v. A., T. & S. F. R. Co.* 122 Mo. App. 85, 97 S. W. 1007; *Small v. Lonergan,* 81 Kan. 48, 105 Pac. 27, 25 L. R. A. N. s. 976; *Anonymous,* Minor (Ala.) 52, 12 Am. Dec. 31; *Larthet v. Forgay,* 2 La. Ann. 524, 46 Am. Dec. 554; *McClurg v. Brenton,* 123 Iowa, 368, 98 N. W. 881.

The common law of England from Magna Charta down has always protected the citizen in the occupation of his home free from arbitrary invasion and search. William Pitt voiced the spirit of the law of England when he said: "The

poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter,—but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement." This sacred right is protected by our constitutions, both state and federal, in the following provisions: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Const. U. S. Amend. IV; sec. 11, art. I, Const. Wis.

In the case at bar Busche and Olson, acting for defendant, without warrant or authority of law, at midnight when the plaintiff was alone in her dwelling house, without her consent, entered and searched it for the avowed purpose of obtaining information or evidence to be used in an effort to convict the plaintiff's son of burglary. Nothing could be better calculated to wound the feelings of the plaintiff and humiliate her than such acts. Here there was a wilful wrong affecting the personal security of the plaintiff, if not her liberty, character, reputation, and domestic relations. We think it clear that the plaintiff is entitled to damages for mental suffering caused by the acts of Busche and Olson in entering her dwelling house and making the search complained of, and therefore the court below was in error in excluding the evidence objected to by counsel for defendant.

It is contended by appellant that the question of punitory damages should have been submitted to the jury. We are of opinion that there was not sufficient evidence to carry the question of punitory damages to the jury. *Topolewski v. Plankinton P. Co.* 143 Wis. 52, 126 N. W. 554.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.