LECHNER, Appellant, vs. EBENREITER and another, Respondents.

*June 4—June 20, 1940.*

*Emmet McCarthy* of Marinette, for the appellant.

For the respondent Charles B. Ebenreiter there was a brief by *George Crawford* of Gillett.

For the respondent Gillett State Bank there was a brief by *Lehner & Lehner* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

FOWLER, J.   As appears from the foregoing statement, the action is for malicious prosecution for grand larceny, and the jury had returned a verdict on which, if it was upheld by the court, the plaintiff was entitled to a judgment against the defendant Ebenreiter, if not against the defendant bank. As to two of the jury's findings, (1) as to probable cause of Ebenreiter for proffering the charge of larceny, and (2) that Ebenreiter did not make a "full, fair and honest" statement to the bank's attorney, the trial court ruled that there

was no evidence before the jury to warrant them. The answers to these questions were changed by the court and judgment was entered on the amended verdict for both defendants. It is to be noted that the court did not change the finding of the jury that Ebenreiter did not make such statement to the district attorney.

The plaintiff assigns as error that the court erred in changing the answers of the jury and refusing to enter judgment upon the verdict as returned by the jury against both defendants for both compensatory and punitory damages. The issues may be most conveniently discussed by taking up the several contentions presented by the defendants in support of the judgment. These are as follows: (1) There was no evidence to warrant a finding of want of probable cause; (2) Ebenreiter made a full, fair, and honest statement to the district attorney; (3) Ebenreiter made such statement to the bank's attorney; (4) there is no evidence of malice; (5) the dismissal by the justice was not a dismissal in favor of the plaintiff; (6) the bank is not liable for the acts of Ebenreiter; (7) if the bank is liable for compensatory damages, it is not liable for punitory damages.

(1), (5) It does not appear from the evidence that the plaintiff told Ebenreiter or Ankerson that he had fully paid the $125 for which he put up the certificates as security, or that the bonds were collateral for only that specific sum. But the jury were fully warranted in believing from the evidence that such was the fact and that the plaintiff believed that he was entitled to the possession of the certificates; and the jury were also warranted in believing that both Ebenreiter and Ankerson knew that he so believed. If Ebenreiter and Ankerson so knew, it is manifest that Ebenreiter had no reasonable grounds for believing the plaintiff guilty of larceny, as the taking of property openly or refusing to return it after taking it openly in the honest belief of ownership thereof and of right to take or retain it absolves from felonious intent. *Fetkenhauer v. State,* 112 Wis. 491, 495, 88 N. W. 294.

The defendants contend that the circumstances of the dismissal of the criminal proceeding were such as to conclusively show probable cause, and to show that the proceeding was not concluded favorably to the plaintiff, and that for these reasons alone the instant action was properly dismissed by the trial court.

The general rule relied on by defendants as to this effect is stated in 18 R. C. L. p. 25, § 13:

"It is generally held that where the original proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties, or solely by the procurement of the accused as a matter of favor, or as a result of some act, trick, or device preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of an action for malicious prosecution. The reason for this rule is that where the termination of the case is brought about by a compromise or settlement between the parties, understandingly entered into, it is such an admission that there was probable cause that the plaintiff cannot afterwards retract it and try the question, which by settling he waived."

This rule is stated in 38 C. J. p. 443, § 95, as follows:

"Where the termination of a criminal prosecution or civil action has been brought about by the procurement of defendant therein, or by compromise and settlement, an action for malicious prosecution cannot be maintained. A limitation of the rule, recognized by some decisions, is that the procurement or compromise must be voluntary."

The discharge by an examining magistrate, or a *nolle prosequi* by the district attorney, except under circumstances as above stated, is a sufficient termination of the action to support an action for malicious prosecution. 38 C. J. p. 442, § 92. The facts by reason of which the defendants would take the case out from under the rule last stated are as follows: The docket of the justice covering the preliminary

hearing shows that Ebenreiter, Ankerson, and August Jaeger testified for the state, and Mr. and Mrs. Owens for the defendant, the plaintiff herein. "Testimony closed 5 p. m. Reduced to writing and filed herein. State rests. Defendant [plaintiff] rests. On motion of District Attorney Giles V. Megan it is hereby ordered that the charge of larceny against the accused be dismissed, and it is further ordered that the said securities be returned to Wm. Owens and Minnie Owens, upon said delivery of securities to the district attorney. Motion granted and case dismissed against the defendant." This docket was before the jury. The court stated to the jury after colloquy between counsel in absence of the jury, that it was stipulated that the record might show that the district attorney said on the preliminary hearing "that it was agreed between him and Mr. O'Kelliher who was then the attorney for the defendant in that action, being the plaintiff here, that the certificates be returned to Mr. and Mrs. Owens." Mr. Lehner, counsel for the defendants, then offered from the reporter's transcript of the proceedings on the original hearing, "a statement by Mr. O'Kelliher that the certificates were at Wabeno and that if he had them he would deliver them over right then." Mr. McCarthy objected to that, and the court said that Mr. Lehner's statement was taken subject to the objection. No transcript of the evidence taken or proceedings had before the justice is in the record. The testimony then closed. Nothing was said about any agreement for return of the certificates by the court in the charge. The record shows that Mr. Crawford in his argument stated that the plaintiff was not discharged by the justice. Plaintiff's counsel objected to the statement, and said that the only evidence shown by the record was that it was agreed between defendants' counsel and the district attorney that the certificates be returned to Mr. and Mrs. Owens. Nothing else respecting the matter appears in the record.

Referring to the statement quoted above from Ruling Case Law to the effect that a dismissal based upon agreement or settlement or one procured by the accused as matter of favor constitutes an admission of probable cause, the proceedings evidenced as above stated cannot be considered such admission as matter of law. Where different inferences may be drawn from the evidence respecting such matter, the matter is to be determined by the jury. *Lamprey v. H. P. Hood & Sons,* 73 N. H. 384, 62 Atl. 380; *Holliday v. Holliday,* 123 Cal. 26, 55 Pac. 703; *Saner v. Bowker,* 69 Mont. 463, 222 Pac. 1056; *White v. International Text Book Co.* 156 Iowa, 210, 136 N. W. 121; *Burkett v. Lanata,* 15 La. Ann. 337; *Marcus v. Bernstein,* 117 N. C. 31, 23 S. E. 38; *Robbins v. Robbins,* 133 N. Y. 597, 30 N. E. 977; *Fadner v. Filer,* 27 Ill. App. 506. In *Marcus v. Bernstein, supra,* it was held that a dismissal by the district attorney constituted a basis for a suit for malicious prosecution unless the record shows that the dismissal was entered at the instance of the plaintiff. The record does not so show here. As the jury in the instant case found want of probable cause, this settled that issue. And it is further to be noted that nothing whatever was settled or compromised between Ebenreiter or the bank and the plaintiff. There was nothing between them to settle. The plaintiff owed neither of them anything, and he did not pay or agree to pay anything to either of them. In all the cases cited by defendants in which agreements of settlement or compromise were held to bar actions for malicious prosecution indebtedness by the plaintiff to the person suing out the warrant existed. The implied promise of plaintiff to return the certificates to Owens, if such promise be implied, considered as an admission, cannot be considered as an admission of the larceny of the certificates, but only as an admission that the plaintiff had no right to possession of them as against the defendants without furnishing Ebenreiter or Ankerson satisfactory evidence that the Owens had told him to get them from the bank. The plaintiff was not charged

with wrongfully taking or retaining possession of the certificates, but with larceny of them.

(2), (3) The question of reliance on advice of counsel is an affirmative defense of which the burden of proof is on the defendants. There must be, as stated in the questions submitted to the jury, a full, fair, and honest statement of all the facts known to and all information possessed by the person who makes the criminal complaint and thereby causes the imprisonment. What was said by Ebenreiter to the district attorney rests wholly on the testimony of Ebenreiter. Such statement as he made to the district attorney was made by telephone. He had previously talked with Mr. Crawford, who was the bank's attorney. Ebenreiter testified that on the plaintiff's leaving the bank: "I called up our attorney, George Crawford, I told him of what had transpired and he said this was a case for the district attorney to handle and proposed to me to call up the district attorney. I did that. . . . I called him at Oconto by telephone. I told him what had taken place—all that had taken place. He instructed me what to do." After the conversation with the district attorney, Ebenreiter went again to Mr. Crawford's office and testifies as to what he there said and thereafter did: "I discussed the matters that have been talked about here in court with Mr. Crawford. I told him all that had happened. I told him all that happened as I understood it to be. I told him that the certificates had been in the custody of the bank before April 26, 1934. I said something to him about the removal of those certificates from the bank." On adverse examination, Ebenreiter admitted that he had testified before the justice on the preliminary examination that when the plaintiff examined the certificates that Ebenreiter procured from the bank vault he said that he was going to take them to the bank at Wabeno and "bring you back the change." He testified on trial that he does not remember whether he told the district attorney that the plaintiff said he was going to cash the certificates

and bring back the change. He told the district attorney· that the certificates had "disappeared," and that the plaintiff "admitted taking them without our consent, and refused to surrender them; that the bank had not consented to his taking them." That there "may have been more than he told" the district attorney. He did not remember whether the certificates were left at the bank to secure the Owens. He did not "remember any more" whether he told "all these things" relating to the certificates being put up as security for the Owens and about the chattel mortgage. He did not tell the district attorney "all the information" that was brought out on the examination of the witness on the preliminary examination. He did not tell him the certificates "were pledged to secure the Owens." He did not remember whether he told it to Crawford. He thought he told Crawford about the mortgage. Immediately after the plaintiff left with the certificates he "made some explanation to Crawford." Crawford told him that it was "outside his field" and he should take the advice of the district attorney. The district attorney told him to get out a warrant for larceny. It is to be borne in mind that Ebenreiter heard what was said between the plaintiff and Ankerson at the bank. Ankerson testified that when Ebenreiter demanded the certificates the plaintiff said "those are my certificates." The version given by Ebenreiter on the trial of what occurred when the plaintiff and Ankerson were at the bank to get the certificates was different in material respects from his testimony as to those occurrences as he gave them on preliminary examination. Ebenreiter and Ankerson both claimed on the trial that the certificates were left to secure the whole debt of the plaintiff to the Owens, but neither testified as to anything said or done to that effect by either the plaintiff or the Owens. No doubt Ebenreiter told Mr. Crawford and the district attorney that the certificates were up as collateral to the mortgage debt, but they did not tell them that the plaintiff claimed otherwise.

It is incredible that had he so told either Crawford or the district attorney, that either would have told him that the plaintiff was guilty of larceny or that grounds existed for believing him so guilty. We consider that the jury's findings to both the questions here under consideration are supported by the evidence and the court's change of the answer as to statements to the bank's attorney was erroneous.

(4) As to the finding that Ebenreiter was actuated by malice, we consider that the evidence sufficiently supports it. Ankerson testified that he wanted to get hold of the avails of the certificates to apply them on the mortgage Owens owed the bank, and that if there would be anything left he wanted it to be applied on the other note. After the plaintiff went away from the bank Ankerson and Ebenreiter consulted as to what to do. They promptly stopped payment on the certificates. This was all that was necessary in order to protect the Owens or to protect them from liability to the Owens for letting the certificates get in the hands of the plaintiff, whatever the rights of the Owens were. Neither Ebenreiter, the bank, nor Ankerson had any lawful claim whatever upon the certificates or their avails either of ownership or as security for indebtedness of the plaintiff to any of them. The jury were justified in believing that the purpose and motive of the prosecution was to get hold of the money in order to apply it on the debt of the Owens to the bank. We consider that the inference of malice of Ebenreiter by the jury was warranted.

(6), (7) The defendants' claim that the bank is not liable as to compensatory damages for the act of Ebenreiter in instituting the criminal prosecution seems to be foreclosed by the holdings of this court in *Topolewski v. Plankinton Packing Co.* 143 Wis. 52, 57, 126 N. W. 554. The master is liable for the wrongful acts of his servant done in the performance of the duties of his employment. One of Ebenreiter's duties as cashier was to protect the securities left with the bank for safekeeping. He was the manager of the bank.

Neither the president nor anyone else but Ebenreiter took any part ordinarily in the conduct of the bank's business. In the instant case the two consulted as to what should be done on the plaintiff's taking the certificates. They concluded to consult the bank's attorney and did so. The attorney went with Ebenreiter when he went to the justice to make the complaint. He dictated the complaint and directed Ebenreiter to swear to it. He was present when the plaintiff was brought before the justice and suggested the amount of the bond. Whatever was done was done for the bank and by the bank. To the knowledge of everybody the plaintiff lay six days in jail awaiting preliminary hearing. Two days more intervened before the examination. There was no repudiation by the bank of the prosecution in the meantime. On the contrary, both Ebenreiter and Ankerson gave testimony on the hearing, without objection to the proceeding by either of them or by anyone else in behalf of the bank. Under the *Topolewski Case, supra,* pages 67, 68, the act of a departmental manager taken "to protect the corporate business from unlawful depredations, . . . whether the means employed were or were not legitimate," was held to render a corporation liable for malicious prosecution, because the general manager of the corporation had given general instructions to the departmental manager respecting protection from depredations and the corporation had not repudiated the departmental manager's act on becoming aware of it. Nonrepudiation was held to constitute approval, and approval was held to constitute ratification. Ratification in such case may be "circumstantial," and "conduct by those intrusted with the whole power of the corporation [bank] clearly indicating approval of the wrongful act of the agent in performing his duties" constitutes such ratification. Upon like reason the act of Ebenreiter rendered the defendant bank liable for malicious prosecution.

The case above cited also inferentially covers the matter of punitory damages, as do the following: *Lehner v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579; *Manol v. Moskin Bros., Inc.,* 203 Wis. 47, 233 N. W. 579; *McAllister v. Kimberly-Clark Co.* 169 Wis. 473, 173 N. W. 216; *Di Benedetto v. Milwaukee E. R. & L. Co.* 149 Wis. 566, 571, 136 N. W. 282; *Shall v. Minneapolis, St. P. & S. S. M. R. Co.* 156 Wis. 195, 202, 145 N. W. 649; *Marlatt v. Western Union Tel. Co.* 167 Wis. 176, 180, 167 N. W. 263; *Meshane v. Second Street Co.* 197 Wis. 382, 222 N. W. 320. Whether · an award of punitory damages against a corporation may be made by the jury in the first instance appears to be for the court to decide. *Topolewski Case, supra,* p. 71; *Robinson v. Superior Rapid Transit R. Co.* 94 Wis. 345, 68 N. W. 961. The trial judge left assessment of punitory damages to the jury in the instant case. Malice of Ebenreiter being expressly found, and both authorization and ratification by the bank sufficiently appearing, we consider that they were properly allowed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to vacate the order amending the verdict and to enter judgment upon the verdict returned by the jury, with taxable costs and disbursements.